DUNLOP S. S. CO., Limited, v. TWEEDIE TRADING CO.

(Circuit Court of Appeals, Second Circuit. April 18, 1910.)

No. 192.

1. SHIPPING (§ 50*)—CONSTRUCTION OF CHARTER PARTY—LIABILITY FOR EXPENSES OF LEGAL PROCEEDINGS AGAINST VESSEL.

A provision in a time charter, which did not amount to a demise of the vessel, that the charterer should "provide and pay for all  *  *  *  consular charges," did not require it to procure a bill of health from the Cuban consul at the port of departure, required by the laws of Cuba to entitle the vessel to enter a Cuban port, that being the duty of the master, even though the charterer may have been required to pay the charge therefor, and the charterer is not liable to the owner for damages, consisting of a fine and cost of legal proceedings incurred by the vessel by reason of her entering a Cuban port without such bill of health.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 50.*]

2. SHIPPING (§ 49*)—CONSTRUCTION OF CHARTER PARTY—BREAKDOWN CLAUSE.

The breakdown clause of a time charter party, providing, inter alia, that in the event of stranding, preventing the working of the vessel for more than 24 hours, "payment of hire shall cease until she be again in

---

an efficient state to resume her service," relates only to physical efficiency; and where the vessel, when again tendered to the charterer for service after a stranding, was in fact in an efficient state or seaworthy, she cannot be continued off hire until her master shall procure a survey and a Lloyd's certificate of seaworthiness.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 187–202; Dec. Dig. § 49.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Dunlop Steamship Company, Limited, as owner of the streamship Queen Olga, against the Tweedie Trading Company. Decree for respondent (162 Fed. 490), and libelant appeals. Affirmed.

Convers & Kirlin (J. Parker Kirlin and John M. Woolsey, of counsel), for appellant.

R. J. M. Bullowa, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is an action in personam by the owner against the charterer upon a time charter of the steamship Queen Olga, the relevant provisions of which are:

"1. That the owner shall provide and pay for all provisions, wages and consular shipping and discharging fees of the captain, officers, engineers, firemen, and crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine room, and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service.

"2. That the charterers shall provide and pay for all coals, port charges, pilotages, agencies, commissions, consular charges (except those pertaining to the captain, officers or crew), and all other charges whatsoever except those before stated."

The question raised upon this appeal is whether by virtue of these provisions the charterer became liable to the owner for damages, consisting of a fine and the cost of legal proceedings, incurred by reason of the vessel's entering a Cuban port without the bill of health required by Cuban laws.

This charter party is similar to the one in the recent case of The Santona (Clyde Commercial S. S. Co. v. West Indian S. S. Co., 169 Fed. 275, 94 C. C. A. 551), which this court held not to amount to a demise of the vessel. Consequently the navigation of the ship during the time of the charter was in the hands of the owner, and, unless the provisions just quoted otherwise require, it was obliged to obtain the documents necessary to enable the vessel to enter a port within the limits of the charter. This was an obligation to be performed by the owner, through its agent, the master, and the master owed the owner a duty to perform it.

The master failed in the performance of his duty to the owner. He entered a Cuban port without the bill of health required by law. The vessel was seized, a fine imposed, and costs incurred. It may well be that the owner has a valid claim against the master for breach of duty;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

but it has no claim against the charterer, unless it can be based upon the language of the second paragraph above quoted:

"That the charterers shall provide and pay for all * * * consular charges."

The obligation to provide for a charge can only mean to provide for the payment of a charge. The duty to pay the fee necessary to obtain a document is quite distinct from the duty to obtain it. The obligation of the charterer "to provide and pay for * * * consular charges"—even if it embraced the duty to pay the fee required for the necessary bill of health—in no way changed the duty which the master owed the owner not to take the vessel into port without a bill of health. The charterer, by agreeing to pay a fee, did not assume responsibility for acts of the master in violation of law. Its obligation to pay consular charges made it responsible for the amount of those charges, but not for damages arising from the master's wrongdoing.

The distinction between the duty of the charterer to pay the fee for the bill of health—assuming that such obligation existed—and the duty of the owner to obtain it is shown in a case in the English Court of Appeal (McIver v. Tate Steamers, Limited, 72 Law Journal Rep. 253, K. B. Div.) decided in 1903, where it was held, under a charter requiring the charterers "to provide and pay for"—using the precise language of the present charter party—all the coal, that the owners were not relieved from responsibility to see that the ship was seaworthy at each stage of her voyage by reason of there being a sufficient supply of coal on board. Indeed, it is not necessary to go so far in this case as in the English case. The duty to "provide" coal might well be held to include the duty to furnish it, without the conclusion following that the obligation to "provide" a charge embraced the duty to obtain the document for which such charge would be made.

In our opinion there is nothing in the charter party requiring the charterer to respond to the damages sued for, or relieving the shipowner of the burden of them, and we find no act of the charterer or its authorized agent extending its obligation.

With respect to the charterer's affirmative contention that the decree should be modified, it is sufficient to say that we approve the conclusion of the District Judge that the charterer was not entitled to any deduction of hire after the date of tender as pleaded in the libel.

The decree is affirmed, with costs of this court to the appellee.