LUCKENBACH v. INSULAR LINE.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

No. 214

SHIPPING (§ 54*)—TIME CHARTER—LIABILITY FOR INJURY IN DOCKING.

A time charter, government form, by which the owner is to provide and pay the master and crew, although the master is to be under the orders of the charterer as regards employment, agency, and other arrangements, is not a demise of the ship, but leaves the owner responsible for her navigation, and he cannot hold the charterer responsible for an injury received by her in docking, due to the mismanagement or negligence of the master.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219-221; Dec. Dig. § 54.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Edgar F. Luckenbach, as owner of the steamer Julia Luckenbach, against the Insular Line. Decree for respondent, and libelant appeals. Affirmed.

This cause comes here upon appeal from a decree, dismissing the libel. The libel was filed to recover for damages which the steamer Julia Luckenbach sustained while being docked by steam tugs at Pier 31, Brooklyn, N. Y.

Peter S. Carter, for appellant.

Wheeler, Cortis & Haight (John W. Griffin, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. Libelant is the owner of the steamer, which was chartered to the respondent, Insular Line, under a charter

party in the well-known form of "time charter, government form." It contains the usual clauses, viz., that steamer is to be placed at the disposal of the charterers, being strong and in every way fitted for the service, and "with full complement of officers, seamen, engineers, and firemen."

"1. That the owner shall provide and pay for all provisions, wages, and consular shipping and discharging fees of the captain, officers, engineers, firemen, and crew; shall pay for all insurance of the vessel, also for all the cabin, deck, engine room, and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service.

"2. That the charterer shall provide and pay for all the coals, port charges, pilotages, agencies, commissions, consular charges (except those pertaining to the captain, officers or crew), and all other charges whatsoever, except those before stated."

"7. That the cargo or cargoes to be laden and/or discharged in any dock or at any wharf or place that the charterers or their agents may direct, provided the steamer can always safely lie afloat at any time of tide.

"8. That the captain shall prosecute his voyages with the utmost dispatch, and * * * the captain (although appointed by the owners) shall be under the orders and direction of the charterers as regards employment, agency, or other arrangements."

The vessel arrived from sea and anchored near Bedloe's Island to wait for tugs which were required to assist her in docking. Tugs were engaged by the charterer and sent to her, with directions that she should be docked at Pier 32. She raised her anchor and was towed over to the pier. She had her own steam up. When she reached there, her docking presented difficulties, owing to the state of the tide and the fact that she had a heavy list. No specific directions had been given her master to dock at any given time. In the process of docking she received injuries. The libel charges that there was negligence in attempting to dock the steamer at that stage of the tide, and avers that the damage was caused not through any fault on the part of libelant, but was caused "while in the possession, control, and while under charter to respondent."

It has been repeatedly held that this form of time charter is not a demise of the ship. It is sufficient to refer to our recent decision in The Volund, 181 Fed. 643, where we held that the navigation of the ship during the time of the charter is in the hands of the owner. We consider the docking of the vessel a part of her navigation. The master was in control of her, and if her condition was such that it was unsafe to undertake that operation in that state of the tide, he should have waited until the condition was more propitious. Many authorities are cited on appellant's brief in support of his contention that the charterer was in control of the navigation of the vessel for the purpose of docking her, and that the tugs were consignee's agents, for whose negligence it would be liable. We find in none of the cases cited anything to induce a modification of the conclusions expressed in The Volund. The case does not present one of the excepted situations reserved in that opinion for future disposition, where, for example, the consignee being required to furnish something he had agreed to supply, such as a pilot, a tug with master and crew, or what not, supplies a person whom he has reason to think incompe-

tent. So far as appears, the tugs were proper ones and their masters competent. The Volund, 181 Fed. 666.

The last page of the brief for appellant submits that the charterer is liable for the damages sustained while docking under article 4 of the charter party, which provides:

"4. Hire to continue until her delivery in like good order and condition to owners (unless lost) at New York."

No such claim is made in the libel, nor does it seem to have been raised in the District Court. There is no assignment of error which covers it. It seems sufficient to say that, where the charter party is not a demise of the vessel, there is neither reason nor authority for holding that the charterer must pay for damages caused by mismanagement in the navigation of the vessel.

The decree is affirmed, with costs.