## THE BEAVER.

(Circuit Court of Appeals, Ninth Circuit. January 4, 1915.)

No. 2383.

1. SHIPPING ☞40—CONSTRUCTION OF TIME CHARTER—DEMISE OR CONTRACT FOR SERVICE.

A provision in a time charter party that the master and officers, although appointed by the owner, shall carry out the orders of the charterer as regards employment, agency, and other arrangements, and the handling of cargo, does not make the charter a demise of the vessel nor vest the charterer with any control over her navigation.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. ☞40.

Demise of vessel, see note to The Del Norte, 55 C. C. A. 225.]

2. COLLISION ☞114—RIGHT OF ACTION—"TIME CHARTER."

A charterer of a vessel by a "time charter," which is not a demise of the ship but merely a contract of affreightment under which the owner retains possession and control over its navigation, is not responsible for her faults of navigation; and, where she is sunk in a collision for which both vessels were in fault, he may recover his entire loss from the other vessel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 243; Dec. Dig. ☞114.]

Appeal from the District Court of the United States for the First Division of the Northern District of California; Robert S. Bean, Judge.

Suit for collision by the Portland & Asiatic Steamship Company, charterer of the steamship Selja, against the steamship Beaver; San Francisco & Portland Steamship Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 197 Fed. 866. See, also, 219 Fed. 134, 135 C. C. A. 32.

William Denman, Ira A. Campbell, and McCutchen, Olney & Willard, all of San Francisco, Cal., for appellant.

E. B. McClanahan and S. H. Derby, both of San Francisco, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

ROSS, Circuit Judge. The appeal in this case is from that portion of the judgment just affirmed in the case entitled Olaf Lie, Master, etc.,

v. San Francisco & Portland Steamship Company, a Corporation, Claimant of the American Steamship Beaver, 219 Fed. 134, 135 C. C. A. 32, which awarded the present appellee full recovery against the present appellant for the loss of its bill of lading freight through the sinking of the Selja and for the value of the bunker coal, flour slings, house flag, and dunnage wood and mats belonging to the appellee, and which also went down with that ship.

The parties to this appeal are agreed as to the value of those respective items, but the appellant contends here, as in the other case, that the disaster was caused by the joint fault of the two ships, and that because of the fault of the Selja the appellee is entitled to recover only subject to the rule of cross-liabilities.

It is conceded that at all of the times in question the appellee held a time charter from the owner of the Selja, which was not a demise of the vessel, but a contract of affreightment merely, for the carriage of passengers, live stock, and merchandise; that the appellee procured to be shipped on board the Selja certain goods, wares, and merchandise, and gave bills of lading therefor on which the total freight was the amount that the appellee was awarded by the court below; and that the bunker coal was furnished the Selja by the appellee for steaming purposes under the requirements of the charter party; and that the flour slings were likewise furnished that vessel by the appellee for loading and discharging her cargo, and the dunnage wood, mats, etc., for the proper stowing of the cargo. The property in question having been lost by the improper navigation of the Selja, in connection with the like improper navigation of the colliding ship Beaver, as has just been adjudged in the case above referred to, the real question here manifestly is whether the charterer of the Selja, whose contract with her owner was simply one of affreightment, can be properly held in any way responsible for the navigation of that ship. The court below held, and we think rightly, that the charterer had no control whatever over the officers of the ship, or over its navigation, and cannot be properly made to suffer for her master's negligence.

[1] In Leary v. United States, 14 Wall. 607, 610, 20 L. Ed. 756, the court said:

"If the charter party let the entire vessel to the charterer with a transfer to him of its command and possession and consequent control over its navigation, he will generally be considered as owner for the voyage or service stipulated. But, on the other hand, if the charter party let only the use of the vessel, the owner at the same time retaining its command and possession, and control over its navigation, the charterer is regarded as a mere contractor for a designated service, and the duties and responsibilities of the owner are not changed. In the first case the charter party is a contract for the lease of the vessel; in the other it is a contract for a special service to be rendered by the owner of the vessel. In examining the adjudged cases on this subject, we find some differences of opinion, especially in the earlier cases, as to the effect to be given to certain technical terms used in the charter party in determining whether the instrument parts with the entire possession and control of the vessel, but no difference as to the rule of law applicable when the construction is settled. All the cases agree that entire command and possession of the vessel, and consequent control over its navigation, must be surrendered to the charterer before he can be held as special owner for the voyage or other service mentioned. The retention by the general owner of such

command, possession, and control is incompatible with the existence at the same time of such special ownership in the charterer."

In 36 Cyc. 66, it is said:

"If by the terms of a charter, or necessary intendment of the parties, the entire vessel is left to the charterer, with a transfer to him of its command and possession, and consequently of control over its navigation, he will generally be considered as owner pro hac vice, that is, as owner for the voyage or service stipulated, as to parties dealing with him in such capacity, whether the letting is in writing or by parol. The general owner is not a common carrier, but a bailee to transport for hire, and the charter is a contract for the lease of the vessel. The officers and crew are servants of the charterer, and the charterer becomes the carrier of the goods shipped, and in procuring freight the master is then the agent of the charterer, and the general owner is not responsible for the contracts of the master or charterer if the creditor has notice of such charter party, particularly where the charter expressly makes the master the agent of the charterer. If the charter party lets only the use of the vessel, the owner at the time retaining the command and possession and control over its navigation, the charterer is regarded as a contractor for a designated service, the charter party being a mere contract of affreightment and the duties and responsibilities of the owner are not changed, and the charterer is not clothed with the character or responsibility of ownership. A special ownership does not pass, although the terms of the instrument are 'let and hired,' and the hirer agrees to pay a gross sum. Under these circumstances, the master is the owner's agent and the latter is charged with his acts and contracts. So, although the charterer agrees to provide and pay all port charges, it has been held that the owner is liable for delay to the vessel or a fine imposed for failure of the master to secure a bill of health. Where the officers of the vessel are agents of the owners as to certain matters, and of the charterers as to others, they will be regarded as agents of one party or the other according to the work on which they are engaged. The inclination of courts is to construe a charter party as a contract of affreightment, charging the shipowners as carriers, and not as a demise of the vessel, unless its tenor clearly calls for the latter construction; and the general owner of a ship will be deemed owner for the voyage where the intention of the parties in that respect is indefinite on the face of the charter party; and a charter party will not be construed as a demise of the ship, unless the possession is transferred to the charterer, even where the whole capacity of the vessel is let. But where the entire capacity of the vessel is chartered to one party, the owner becomes a special and not a common carrier, and may contract against consequences of his servants' negligence."

See, also, Scrutton on Charter Parties and Bills of Lading (6th Ed.) p. 1 et seq., in which it is also shown that the modern tendency is against the construction of a charter as a demise or lease.

There is nothing in this case to show that the charterer had anything to do with the navigation of the Selja. On the contrary, it is expressly conceded that the contract between the owner and the charterer was one of affreightment only. True, the charter party contained the common clause to the effect that, though the master and officers of the ship were appointed by the owner, they were to carry out the orders of the charterer as regards employment, agency, and other arrangements, and in regard to the handling of the cargo, as though they received such instructions from the owner.

A similar clause was in the charter party which was under consideration by the Circuit Court of Appeals of the Second Circuit in the case of The Volund, 181 Fed. 643, 666, 104 C. C. A. 373, 396, in speaking of which the court said, among other things:

"Nor can we assent to the proposition, which is earnestly contended for, that under charter parties of this sort there is some joint, two-headed navigation of the vessel which will put both parties in control. The provisions (clauses 8, 10) that the captain shall be under the orders and direction of the charterers as regards employment and other arrangements merely authorize the charterer to designate the safe port, and the berth therein to which the ship shall proceed. How she shall be navigated to get there is a matter entirely within the owner's hands."

See, also, The Santona, 169 Fed. 275, 94 C. C. A. 551; Dunlop S. S. Co. v. Tweedie Trading Co., 178 Fed. 673, 102 C. C. A. 173; Luckenbach v. Insular Line, 186 Fed. 327, 108 C. C. A. 405.

[2] The charterer in the present case, having nothing whatever to do with the navigation of the Selja, upon the most obvious principles of justice cannot be held in any way responsible for the negligence of her master, who, in the matter of her navigation, was the agent of her owner, and not the agent of the charterer.

The judgment is affirmed.