## THE AQUITANIA.

### GASTON, WILLIAM & WIGMORE S. S. CORPORATION v. CUNARD S. S. CO., Limited.

(District Court, S. D. New York. December 6, 1920.)

**Collision ⚷114—Time charterer may recover for loss of use of vessel.**

A time charterer under a government form of charter has a property interest in the vessel and may recover damages for a collision in which she is injured including his damages for loss of use while she is being repaired.

⚷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit for collision by Gaston, Williams & Wigmore Steamship Corporation against steamship Aquitania, Cunard Steamship Company, Limited, claimant. On exceptions to libel. Overruled.

Lord, Day & Lord, of New York City (Allan B. A. Bradley, of New York City, of counsel), for claimant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating, of New York City, of counsel), for libelant.

MAYER, District Judge. The question raised by the exceptions is important and interesting. The libel alleges that libelant is a Delaware corporation and the time charterer of the British steamship Lord Dufferin. The charter in question, a copy of which is made part of the libel, was in the usual "government form" and was for a period of "about five years" from April, 1915.

The libel further alleges that on February 28, 1919, the steamship Lord Dufferin, while operating under said charter, after having been loaded by libelant, was lying, securely anchored, off the Statue of Liberty, and that, while so anchored, she was collided with by the Aquitania which cut off her stern, making it necessary to beach the steamer, and inflicting great damage upon her. The libel then sets forth that libelant as time charterer, by reason of the collision, has been "wrongfully deprived of the use of the steamship Lord Dufferin for a long time to come, and has suffered other damages and incidental expenses," the amount claimed being $1,700,000.

The owner of the Lord Dufferin is not before the court on this hearing, but the court will take judicial notice that the owner (Gaston, Williams & Wigmore of Canada, Limited, a Canadian corporation, not this libelant) has filed a libel in this court, to recover the damages sustained by the owner, which are stated in that libel to consist of expense of repairs, "loss of use during the period of repairs, and other incidental losses and expenses," the amount claimed being $1,000,000.

The exceptions to the libel are: (1) That it does not state facts sufficient to constitute a cause of action; (2) that the allegations of the libel do not disclose any maritime claim or lien against the Aquitania; and (3) that it appears on the face of the libel that at the time of the collision libelant was not the owner of the Lord Dufferin.

The consideration of the question involved starts with the impetus that the aim of the admiralty courts is to work out principles which make for justice and seek to avoid the turning away of a suitor without remedy.

An owner, possessing the full estate in a vessel, can, of course, recover for the loss of use of his vessel, damaged in a collision by the fault of another. The question is whether, when an owner, for a consideration, has parted with the use of his vessel to a time charterer, that fact will justify a full release to the claimant of the damages sustained for loss of use of the vessel. The damages are the same, and thus the inquiry is whether the legal position of the time charterer is such as to debar the recovery sought.

There are four cases in which recovery has been had by the time charterer under circumstances which can be justified only on the theory

pressed by libelant in the case at bar. In these cases, however, the question here involved is not precisely discussed, as will appear infra.

(1) In a per curiam opinion of the Vice Admiralty Court of Quebec, in 1883, the view here urged by libelant seems, in effect, to have been taken as matter of course.

(2) In the Beaver litigation, Mr. Keating and Mr. Bradley have carefully prepared for the court an outline of the essential features of the record, and the court, on examination of the record, finds that the digest thus made covers the points relevant here for consideration. This digest is annexed as an appendix hereto for the convenience of those who may have occasion to study the Beaver record. The Beaver (D. C.) 197 Fed. 866; The Beaver, 219 Fed. 134, 135 C. C. A. 32, Id., 219 Fed. 139, 135 C. C. A. 37. In the District Court (197 Fed. 866) the opinion is taken up with the question as to which vessel was at fault.

Appeals were taken to the Circuit Court of Appeals in two of the three cases, in the case brought by the master of the Selja against the Beaver, and in the case brought by the charterer against the owners of the Beaver. The former is reported in 219 Fed. 134, 135 C. C. A. 32, and the latter in 219 Fed. 139, 135 C. C. A. 37. The former case is entirely devoted to the question as to which vessel was at fault. This case was appealed to the Supreme Court of the United States (243 U. S. 291, 37 Sup. Ct. 270, 61 L. Ed. 726), but that court did not have before it the question presented here.

The other appeal (219 Fed. 139, 135 C. C. A..37) was by the owner of the Beaver from that part of the decree which awarded the charterer of the Selja recovery "for the loss of its bill of lading freight * * * for the value of the bunker coal, flour slings, house flag, and dunnage wood and mats." The court stated the question on appeal as follows (219 Fed. 140, 135 C. C. A. 38):

"The parties to this appeal are agreed as to the value of those respective items, but the appellant contends here, as in the other case, that the disaster was caused by the joint fault of the two ships, and that because of the fault of the Selja the appellee is entitled to recover only subject to the rule of cross-liabilities."

The opinion of the District Judge shows that the same question was the only one discussed in the court below. The right of the charterer to recover as such was not discussed, but the question was whether the negligence of those in charge of the navigation of the Selja could be imputed to her charterer, as it was to her owner, so that the rule of divided damages could be applied in the charterer's case. Both the court below and the court above held that it could not. The court below said:

"The charterer had no control over her navigation and was in no way responsible for the negligence which caused the damages."

The Circuit Court of Appeals said (219 Fed. 142, 135 C. C. A. 40):

"The charterer in the present case, having nothing whatever to do with the navigation of the Selja, upon the most obvious principles of justice cannot be held in any way responsible for the negligence of her master, who, in the matter of her navigation, was the agent of her owner, and not the agent of the charterer."

270 F.—16

It thus appears that in the Beaver Case the question argued and decided was whether the negligence of those in charge of the navigation of the Selja could be imputed to her charterer. The question whether the charterer as such could recover was conceded by the pleadings.

It is, nevertheless, a matter of some importance that the charterer had recovery under the decree, and such recovery is, necessarily, consistent with libelant's theory in the case at bar. It is apparent that neither the proctors nor the court, in a case as substantial and important as The Beaver, regarded the libel or the decree as requiring contest in this regard.

(3) In Sibiria S. S. Corporation et al., owner and time charterer of S. S. Sagua, v. S. S. Binghamton, the report of an experienced special commissioner (former Judge Veeder) came up to this court. In correspondence with counsel, the special commissioner stated:

"I find, also, that the item of damages claimed by the Atlantic Fruit Company, as time charterer of the steamer Sagua, should be allowed."

The interlocutory decree had provided, inter alia, that the special commissioner, in addition to taking proof as to the amount and validity of items claimed as damages by the Sibiria Steamship Corporation, as owner of the Sagua, was also—

"to take proof and to report, with his conclusions, as to the amount and validity of the following items claimed as damages by the Atlantic Fruit Company as time charterer of the steamship Sagua:

Loss of hire of steamship Sagua from December 24, 1917, at 5 p. m., to January 26, 1918, 5 p. m., 1 month 3 days, at $31,524.25 per calendar month, hire allowed and paid by the Shipping Board....$35,574.98

Less credit for hire under Sibiria S. S. Corporation charter at $12,500 per month........................................................ 13,750.00

Total ...................................................$20,824.98

and to ascertain and report to the court, with his conclusions, the facts and amount showing the proper apportionment and adjustment of all the collision claims and liabilities, including cargo damages, as between the steamers Sagua and Binghamton, the Sibiria Steamship Corporation, the Atlantic Fruit Company, the Binghamton Steamship Company, Henry C. Siegel, and Phineas W. Sprague, or any one or more of them."

When the report of the special commissioner came on to be heard, this court said:

"The final question is (1) whether the Atlantic Fruit Company, charterer of the Sagua, has the right to recover full damages against the Binghamton; and (2) whether, if it has such right, the Binghamton has a right to recover over against the Sagua one-half of the charterer's damages.

"The Beaver, 219 Fed. 139, is apparently the only opinion which has any relevancy upon the question of the right of the charterer of the Sagua to recover in full. Copies of the interlocutory and final decrees in the Beaver Case have been furnished to me and will be found printed in the transcript of the record of the case in the Supreme Court. As appears by the decrees, the Portland & Asiatic Steamship Company, which was the charterer of the Selja, recovered in full from the Beaver; but it is provided in paragraph 7 of the interlocutory decree that there should be deducted from the amount recovered by the owners of the Selja one-half of all damages to the charterer of the Selja. The right of affirmative relief against the chartered vessel did not arise in the Beaver Case because the Selja was a total loss.

"The commissioner has found that the Binghamton is entitled to recover from the Sagua a moiety of the charterer's damages. This right rests upon principles of contribution between joint tort-feasors, which principles are applied in admiralty, although not at common law. Erie R. R. Co. v. Erie & Western Trans. Co., 204 U. S. 220, 27 Sup. Ct. 246, 51 L. Ed. 450; In re Eastern Dredging Co. (D. C.) 182 Fed. 179.

"In the case at bar the causes have been consolidated, and it will avoid circuity of action to award this affirmative relief. The effort at simplicity, and at the disposition in one decree of all relevant controversies between the parties, is characteristic of the admiralty courts. Wherever, as here, the result does not lead to any injustice, but, on the contrary, makes for a complete and final disposition, such result should be attained if possible.

"I realize that the question is apparently novel (as would appear from the lack of cases on the subject) but there is no reason why the principle cannot be accepted. In this litigation, such procedure will eliminate proceedings which can have only the same result at which the special commissioner has arrived.

"I agree, therefore, with the commissioner that the amount in question is to be paid by the Binghamton to the Atlantic Fruit Company, and then one-half is to be recovered by the Binghamton from the Sagua." Memorandum of Mayer, D. J., filed December 13, 1919.

My recollection is that the point here argued was not discussed. The interlocutory decree prepared by experienced proctors was accepted by the court, in so far as concerned the right of recovery by the time charterer and the right to recover over.

In Hines, Agent, v. Sangstad S. S. Co. et al. (C. C. A.) 266 Fed. 502, a joint libel was filed by the owner and time charterer of the steamship Sangstad for damage to the vessel's mast, caused by being struck by an unloading crane while discharging cargo, together with damages for loss of time during the necessary repairs. From the record, it appears that the damage to the mast did not make the vessel unseaworthy, and that, therefore, the time charterer was not entitled to claim that the vessel was off hire; also that the charterer must pay to the owner full charter hire for the time during the repairs, and that in turn the charterer could recover from the respondent its actual disbursement, namely, the same amount which it paid the owner of the vessel as charter hire during the delay involved in the time occupied in making repairs. The assessor reported $5,625 for demurrage in favor of the time charter.

The charterer thus recovered the actual disbursement which it was obliged to make, that disbursement being time charter hire which it was obliged to pay the owner during the delay during repairs. At page 506 of 266 Fed. the court said:

"In considering this question it is to be borne in mind that the charterer, by claiming demurrage for the 2½ days, is not seeking to make a profit out of the accident, but to be reimbursed for the loss of the use of the ship, due to the libelee's negligence, and that the libelee, by insisting that the 2½ days be deducted, is endeavoring to impose upon the charterer the loss of the use of the ship during that time."

This case, it seems to me, is precisely in point. How far the recovery shall go is one question, but whether there shall be a recovery is another. Claimant contends that the time charterer has no cause of action; but it is apparent that in the Hines v. Sangstad Case, supra, unless there was a cause of action, the time charterer would not have

had any recovery. The award of the disbursement could have only been on the theory that a tort had been committed against the time charterer's property, which could be redressed in rem.

Libelant, according to the statement of its advocate, seeks to recover only for demurrage and other proximate damages and incidental expenses, such as cost of discharging cargo. To this claimant's advocate answers:

"That in general average libelant will recover these expenses from the owners of the cargo and the owner of the Lord Dufferin, and the amounts so paid to the charterer by the owners of the cargo and of the Lord Dufferin will be recoverable in turn by the owners of the Lord Dufferin and the owners of the cargo from the Aquitania, and recovery of this amount in this suit might result in double payment.

But we are not concerned at this time either with the extent or the limits of recovery. If libelant is entitled to recover for the loss of the use of the vessel, it may recover whatever damages the court will find, as matter of fact and law, to be the proximate result of the injury; also there need be no fear of double recovery. and, in any event, courts of admiralty are usually able to accommodate their decrees to the rights involved.

This brings us to the principle which must be applied or rejected, and that is whether the capacity of the vessel for earning freight and freight moneys, and the use of the vessel, master, and crew to that end, constitute property. It is urged that it does not, principally, because under this form of charter there is no demise. But a demise carries with it control of the vessel for all purposes. It makes the demisee (i. e., charterer, where there is a demise) the owner pro hac vice.

But there is not inconsistency nor illogical proposition involved in a holding that, under a charter such as this, while in respect of navigation and care the ship is the owner's, nevertheless, in so far as its capacity to earn freight is concerned, it is the charterer's. As expressed by Judge Hough in The Santona (C. C.) 152 Fed. 516, at page 518:

"The ship is the owner's ship, and the master and crew his servants for all details of navigation and care of the vessel; but for all matters relating to the receipt and delivery of cargo, and to those earnings of the vessel which flow into the pockets of the charterers, the master and crew are the servants of the charterers. There is, in fact (to borrow a simile from another branch of the law), an estate carved out of the ship and handed over for a specified term to the charterers, and that estate consists of the capacity of the vessel for carrying freight and earning freight moneys, and the use of the vessel, master and crew, for the advancement of the charterers' gains."

In all branches of the law, property has not been limited to tangible things. Franchises, rights of action, and other intangibles have been treated as property for one reason or another, and for one purpose or many. This development has been due in part, at least, to the necessity, in civilized communities, of safeguarding those things or agencies which keep trade and commerce moving on land and water, and which thus encourage investment and venture. Any rule of law, which permits a tort-feasor to escape liability, arrests commercial progress. Here it is charged that a wrong was done, from which injury flowed. If time charterers such as this should through no fault of

their own suffer damage, and then be unable to recover, it is plain that such a result will harm the shipowner in the long run. Venturers will be inclined to be timid, and, in normal times, when large profits are not in sight, they will hesitate to undertake engagements which do not carry fair protection against hazards. It is no answer to say that the charterer may insure. He should not be forced by the law to such resort. When the ship starts on her voyage, the insurance which the time charterer should have is that a court of justice will see to it that a wrong which deprives him of his use under his charter will be appropriately redressed.

## APPENDIX.

### *The Beaver Case.*

Three libels were brought against the Beaver or her owners: (1) Lie, as master of the Selja, on behalf of her owner, officers, and crew, against the Beaver. (2) Owners of the cargo of the Selja against the Beaver. (3) Portland & Asiatic Steamship Company (charterer of the Selja, the vessel lost) against San Francisco & Portland Steamship Company (owner of the Beaver). The three causes were consolidated for trial. 197 Fed. 866. The relevant portions of the record in the suit by the charterers are digested as follows:

The libel therein (Record, pp. 1456–1464) alleges: That the libelant is an Oregon corporation, the respondent a California corporation and the owner of the steamship Beaver, "and that both libelant and respondent occupy the same offices, both in said city and county of San Francisco and in the city of Portland, in the state of Oregon, and have the same corporate officers, who act in similar capacities in each of said corporations." These allegations are admitted in the answer—Record, p. 1466. That on February 1, 1909, the time charter was made in New York between libelant as charterer and respondent as owner of the steamship Selja, whereby the owners chartered and the charterers hired the steamship for a period of about three years. That in pursuance of said charter party upon one of the voyages duly entered upon thereunder libelant procured to be shipped on board cargo "and that Bs/L were duly issued for said goods, wares, and merchandise by this libelant to the shippers of the same." That by the terms of the Bs/L it was provided that freight should be paid by the libelant at San Francisco and Portland upon delivery of the goods. That while on the voyage from the East to San Francisco and Portland under the above-mentioned charter on the 22d of November, 1910, a collision occurred between the steamship Selja and the steamship Beaver, whereby the Selja became a total loss, with all her cargo. (The foregoing allegation was admitted by the answer—Record, p. 1466.) That the collision was brought about solely by the fault of the Beaver, without any fault on the part of the Selja. (This allegation was denied in the answer—Record, p. 1466.) Paragraph VIII alleges "that by reason of said collision libelant's freight, amounting to the sum of $14,-088.36, as hereinbefore described, was totally lost, and it has been damaged by reason of said collision in said amount." (This paragraph of the libel is answered as follows: "Answering unto the VIII article of said libel this respondent admits the loss of freight therein described.")

The libel was later amended by consent (Record, p. 1471), so as to allow the libelant to allege as paragraph VIII–A as follows: "That at the time of said collision libelant had on board said steamship Selja and was the owner of the following articles: [Then follow details, such as bunker coal, flour slings, etc.]"

An interlocutory decree (Record, p. 1400) was entered holding both the Selja and the Beaver at fault for the collision. Paragraph 5 of this interlocutory decree reads as follows: "That the right of the Portland & Asiatic Steamship Company, libelant in case No. 15130, to recover the damages suffered by it for the causes in its libel and the amendments thereto therein mentioned, be left for adjudication till the final decree herein, since further evidence bearing on this right may be adduced by the commissioner."

Thereafter a stipulation as to the damages and facts in the libel of the Portland & Asiatic Steamship Company v. San Francisco & Portland Steamship Company was entered into, which made it unnecessary to go before a commissioner. The relevant portions of the stipulation are as follows (Record, pp. 1409–1413):

"It is hereby stipulated and agreed by and between the parties hereto that the following damages are admitted to have been suffered by the parties represented by Olaf Lie, master of the steamship Selja in his original libel herein in case No. 15099, by the Portland & Asiatic Steamship Company, libelant in case No. 15130, and by the claimant in the case No. 15099.

   *     *     *     *     *     *     *     *     *     *

"4. By the Portland & Asiatic S. S. Company, charterer of the steamship Selja, libelant in case No. 15130. The amount of the damages suffered by this libelant are not admitted, but the following facts are to be taken as true:

"(a) That the charter under which said Selja was proceeding was in the form of the instrument hereunto annexed, marked Exhibit A.

"(b) That at the time of the collision herein said libelant had paid the semimonthly charter hire of said vessel from November 16, 1910, to December 1, 1910, amounting to two thousand five hundred ninety-six and 2/100 (2,596.02) dollars, of which there was later returned to libelant the sum of one thousand five hundred seventeen and 36/100 (1,517.36) dollars, being the charter hire from November 22, 1910, to December 1, 1910.

"(c) That it would have taken the Selja four days from said November 22, 1910, to have arrived at San Francisco and to have discharged the 3,365 tons of cargo destined for that port, and four more days to have arrived at Portland and to have discharged the 693 tons of cargo destined for that port.

"(d) That coal would have been consumed in the following amounts and at the following prices to complete the voyage: [Then follow details.]

"(e) That the following additional charges would have been incurred before delivery of the cargo: [Then follow details.]

"(f) That the total collectible freight on the cargo was: [Then follow details.]

"(g) That the prepaid freight was: [Then follow details.]

"(h) That the cost of discharging the collectible freight alone, as distinguished from the prepaid freight, would be as follows: [Then follow details.]

"(i) That the value of the bunker coal owned by libelant and lost in the collision, * * * and of the other articles also lost, as enumerated in the amendment to the libel, was: [Then follow details.]

   *     *     *     *     *     *     *     *     *     *     *

"6. All of the foregoing damages of all of said parties are exclusive of interest, and interest may be claimed on said damages by all parties.

"7. It is further stipulated and agreed that none of the aforesaid statements of damage is exclusive, and that other damages may be claimed by any of the parties hereto (if warranted by the pleadings) on the evidence adduced herein, or the facts hereby agreed upon; the purpose of this stipulation being to agree on such damages and such facts as can now be agreed upon without the necessity of making proof of the same.

"8. All statements as to damages herein made shall be conclusive in any subsequent proceedings for limitation of liability, but it is not admitted that the claimant in case No. 15099 would be entitled to deduct all its aforesaid damages in such limitation proceedings."

The cause was then by agreement of the parties submitted on final hearing without reference to a commissioner. The District Court's opinion on final hearing is not reported. It is quoted in full from the record, at pages 1428–1432, as follows:

"Memorandum by R. S. Bean, District Judge, on Final Hearing.

"By the interlocutory decree it is adjudged that both the Beaver and the Selja were in fault and that damages should be awarded accordingly; that the Selja's cargo owners and her officers and crew, except her master, are entitled to their damages in full, subject to no offset whatever; that the

damages of the owner of the Selja and her master and that of the Beaver should be apportioned under the usual rule of cross-liabilities and subject to the offsets specified in clause 6 of the interlocutory decree; that the rights of the Portland & Asiatic Steamship Company, the charterer of the Selja and libelant in case No. 15130, to recover damages, be left for adjudication until the final decree. The cause was thereupon referred to a commissioner to ascertain and compute the damages sustained by the respective parties. Thereafter stipulations were entered into fixing the amount of damages or settling the facts from which, in conjunction with the record, such damages can be computed as a matter of law, and the cause has been by agreement of parties submitted on such stipulations and briefs for final decision without reference to a commissioner.

"From the stipulations of facts and admissions made in the briefs filed I find the damages suffered by the respective parties to be as follows:

| | | Amounts. |
|---|---|---|
| 1. | Cargo owners | * * * |
| 2. | Officers and crew of Selja | * * * |
| 3. | Damages of Wilhelm Jebsen, owner of the Selja | * * * |
| | Value of the Selja exclusive | * * * |
| 4. | Damages of Olaf Lie, Master of the Selja | * * * |
| 5. | Damages to the Beaver | * * * |
| 6. | Damages of the Portland & Asiatic Steamship Company, charterer of the Selja | * * * |
| | For loss of pending freight | $10,742.21 |
| | Bunker coal, flour slings, etc. | 3,209.05 |

"It is admitted that * * * the cargo owners and the officers and crew of the Selja, other than the master, are entitled to a judgment against the Beaver for their full damages without offset; that the damages of the owner and master of the Selja and of the Beaver be apportioned, and subject to the offsets as provided in clause 6 of the interlocutory decree.

"The only controverted question is whether the Portland & Asiatic Steamship Company, charterer of the Selja, is entitled to recover in full for the loss of bill of lading freight, bunker coal, etc., or whether it stands in the same relation to the ship as the owner, and its damages should be awarded accordingly.

"For the libelant it is contended that since the charter was a time charter, and not a demise of the vessel, the charterer is to be regarded and treated as an innocent party to the cause of the collision, and entitled to the same remedies as the cargo owners or the crew; while the position of the San Francisco & Portland Steamship Company, the claimant of the Beaver, is that the Selja was the agency or instrumentality of the charterer in earning the bill of lading freight, and that her negligence affected its right to such freights, the same as it does the owner's right to the charter hire.

"The question seems to be one of first impression, as no authorities directly in point have been cited on either side. In my judgment the weight of the argument is within the libelant. The charter was a mere contract of affreightment, the vessel remaining in the possession, control, and command of the owner so far as her navigation was concerned. Her master and crew were the agents of the owner, and not of the charterer. The charterer had no control over her navigation, and was in no way responsible for the negligence which caused the damages. It seems to me, therefore, that it stands in the same position and entitled to the same rights as the innocent cargo owners. I conclude that the libelant in case No. 15130 should recover of the Beaver damages in full without any offset whatever.

"Costs.—It is provided in the interlocutory decree that the original libelant in case No. 15099 and the claimant therein should divide the costs incurred up to that time, and as to these parties the same provision will be made in the final decree. I take it, however, that the provision as to costs relates to the parties named, and not to the rights of the cargo owner and charterer of the Selja, who are innocent parties and entitled to a judgment for their costs.

"Decrees may be prepared accordingly."