### THE ALLIANCA.

(District Court, E. D. Virginia. June 14, 1923.)

Collision ⬥115—Under charter giving owner right to appoint captain, owner, not charterer, liable for damages from improper navigation.

Under charter obligating charterers to pay the wages of officers and crew, and reserving to owners the power to appoint and remove captain and chief engineer, *held*, that the owners, rather than charterers, were in control, and therefore liable for damages caused by improper navigation by the captain; it being immaterial that the collision from which the damage resulted occurred in waters for the navigation of which the master

appointed by the owners had no pilot's license, and that the charterers had agreed that the chief officer, to be appointed by them, should possess the necessary pilot's license.

In Admiralty. Libel by the Thames Towboat Company against the steamship Allianca. Decree against owners of the vessel.

Hughes, Vandeventer & Eggleston, of Norfolk, Va., for Thames Towboat Co.

Hughes, Little & Seawell and John Upton, all of Norfolk, Va., for Old Dominion Transp. Co.

Willcox, Cooke & Willcox, of Norfolk, Va., for Panama R. Co.

GRONER, District Judge. This is a libel filed by the Thames Towboat Company against the steamship Allianca. The Allianca, a large steamship, belonging to the Panama Railroad Company, had been chartered to the Old Dominion Transportation Company for operation in the passenger and freight business between Norfolk and New York. At about 8 p. m., March 27, 1922, the steamship was in collision with the steam tug Bess, the property of the libelants, resulting in the sinking of the tug. The respondent Old Dominion Transportation Company has brought in the Panama Railroad Company under the Fifty-Sixth rule (267 Fed. xxi). Liability of the steamship has been admitted, and a decree entered accordingly.

The question for decision, therefore, is upon whom the loss should fall, and this depends upon the contract between the parties. The charter party was made on the 11th of February, 1922, for a period of four calendar months. The relevant parts, in the determination of the controversy between the parties, are the first, ninth, and tenth paragraphs.

In the first, the charterers undertake to pay "for all provisions, wages, and consular shipping and discharging fees of the captain, officers, engineers, firemen, and crew," and the owners agree to maintain the vessel "in a thoroughly efficient state in hull and machinery for and during the service, damage due to charterer's negligence excepted." In the ninth, the captain and chief engineer (although nominated by the owners)—

"shall be under the orders and direction of the charterers as regards employment, agency, or other arrangements, and the charterers hereby agree to indemnify the owners from all consequences or liabilities that may arise from the captain signing bills of lading or otherwise complying with the same."

Paragraph 10 is as follows:

"That, if the charterers shall have reason to be dissatisfied with the conduct of the captain and/or the chief engineer, the owners shall on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments."

The test usually applied to determine liability is whether, by the contract between the parties, the vessel is transferred to the charterers with the right of command, possession, and control over its navigation, or whether the owners have transferred only the use of the vessel, themselves retaining command and control over its navigation. In the former case the charterers are said to be the owners pro hac vice, and

are subject to all the responsibilities of ownership. In the latter case the contract is one of mere affreightment, and the responsibilities of the owners remain unchanged. The distinction is very fully dealt with in Leary v. United States, 14 Wall. 607–610, 20 L. Ed. 756.

This brings us to the query: Did the owners in this case transfer command, possession, and control, or not? In the case of The Volund, 181 Fed. 643, 104 C. C. A. 373, the charter party was in all respects similar to the one under consideration, except that there the owner was to pay the wages of the master, officers, etc., whereas in this case these were to be paid by the charterers. The conclusion of the Circuit Court of Appeals, Second Circuit, in that case, was that the provision reserving to the owner the right to appoint the captain and to remove him, without any corresponding right on the part of the charterer, created a situation in which the navigation of the ship was in the hands of the owner, and that for damages occasioned by improper navigation the owner, rather than the charterer, under such circumstances, would be liable.

Clyde Commercial S. S. Co. v. West India S. S. Co., 169 Fed. 275, 94 C. C. A. 551, and Dunlop v. Tweedie, 178 Fed. 673, 102 C. C. A. 173, both from the Second Circuit, are two cases to the same effect. Another case in point, and to the same effect, is Pacific Company v. Schubach, etc., Steamship Co., 214 Fed. 854–860, 130 C. C. A. 657. Luckenbach v. Insular Line, 186 Fed. 327, 108 C. C. A. 405, is another case decided by the Circuit Court of Appeals in the Second Circuit, which was in all respects like The Volund, and the decision was likewise in line with that case.

In the case of The Beaver, Circuit Court of Appeals, Ninth Circuit, 219 Fed. 139, 135 C. C. A. 37, it was held that the liability, under almost identically similar provisions of the charter party, was on the owner rather than the charterer. Speaking of the effect of the provision in the charter party requiring the master to carry out the directions of the charterer "as regards employment, agency, and other arrangements," it was decided that this merely authorizes the charterer to designate the safe port and the berth to which the ship shall proceed, leaving the question of how she should be navigated to get there a matter entirely within the owner's hands.

In an earlier case in the New York District (Golcar v. Tweedie, 146 Fed. 563), Judge Adams held otherwise than as stated in the foregoing, but the later decisions of the Circuit Court of Appeals of that Circuit have destroyed any influence that this opinion might have. In some other cases, notably Hahlo v. Benedict, 216 Fed. 303, 132 C. C. A. 447, the provision of the charter party with regard to the navigation of the vessel was, "The captain shall pay the charterer the same attention as if he were the owner and take the yacht where ordered by the charterer," and this language was held to give the charterer full control over the navigation of the vessel and make the captain his agent, regardless of who hired him.

But the language of the charter party in cases of that class and the case under consideration is materially different, and really points out more strongly than anything else could the distinction or test upon

which the cases turn. The case which may be said to be, so far as I am able to determine, more nearly authority for the Panama Company, is that of Gibson v. Manetto, 194 Fed. 331, 114 C. C. A. 291, decided by the Circuit Court of Appeals in the Fifth Circuit. There the contract was:

"We will pay you for the use of your schooner Emma Eliza, including three men, for use in hauling bark, lumber supplies, etc., between Shark river and Key West, the sum of $175 per month. You are to keep the boat in repairs. Payment made monthly."

This was held to be a demise of the schooner, and to put the charterer in complete control, and render him liable for damages, although one of the three men so furnished was the master. The decision in this case is largely based upon the Leary Case, 14 Wall. 607, 20 L. Ed. 756, although the decision in the last-named does not, in my opinion, sustain that view.

The case of The Del Norte (D. C.) 111 Fed. 542, from the Ninth Circuit, is in accord with the case last cited, but its influence as an authority on this subject is very largely curtailed by the later case of The Beaver, supra, and, in addition, the charter in the Del Norte Case required the master and other officers to be "in all respects under the orders and direction of the charterer." So, in the case of Hills v. Leeds (D. C.) 149 Fed. 878, from Judge Hale, the contract provided that the charterer was to have the same authority as the owner with regard to the management and control of the boat, her captain and engineer, with the right to discharge any officer and put another in his place.

In the case under consideration the owners transferred the right to the use of the vessel for a specified time to the charterers. They, however, reserved the right to appoint, and did appoint, the master and chief engineer, and specifically provided that they might not be discharged by the charterers, but were to continue in those positions, notwithstanding the protest of the charterers, if the owners elected so to continue them. The master is the person intrusted with the care and management of the ship. He is ordinarily the representative of the owner, certainly as to all matters of navigation. It might be said that ordinarily he would be the servant or agent of the person who pays him; but where the contrary is specifically provided, as is true in the contract here, the ordinary rule would not apply. I cannot deduce from this contract any other conclusion than that the owners intended to control the navigation of the vessel through their own representative, her master, and to retain this control throughout the period of the hiring by making him answerable only to themselves.

Aside from all or any of the refined distinctions drawn from the above cases, it seems to me it would be an unconscionable rule to say that the charterers were required to accept the master placed on board the ship by the owners, without the right of discharge or correction, and still be responsible for his negligence. If such were the rule, they would be forced, in certain contingencies, to accept the alternative of laying up the ship and being subject to the payment of hire money, or else continue her in command of a master whose competency they doubted, with full liability for his negligence. Unless the plain lan-

guage of the contract makes no other conclusion than that possible, it ought not, in my opinion, to be so held.

It is, however, insisted that in this case the owners ought not to be required to bear the loss, because the collision, and the resulting damage, occurred while the ship was being navigated in the Elizabeth river and Hampton Roads, for the navigation of which the master appointed by the owners had no pilot's license, and that this fact was known to the charterers at the time of the delivery of the vessel, and the latter agreed that the chief officer, to be appointed by them, should possess the necessary pilot's license. If the agreement between the parties contemplated and provided for the displacement of the master while the vessel was on inland waters, and the supplying by the charterers of a competent officer to take charge of the vessel for that service, a different situation would arise. But the evidence clearly demonstrates that it was never in contemplation of the parties that the master appointed by the owners should be displaced at any time, but that, pending the obtaining by him of the necessary pilot's license, the federal rules and regulations on that subject should be met by the appointment of a subordinate who possessed the license required.

At the time of the collision the master was on the bridge, in charge of the vessel and in complete control of her navigation, and it was due to his negligence that the collision occurred. Under these circumstances, the mere agreement on the part of the charterers to provide subordinate officers with the proper credentials to justify the operation of the vessel, does not change the rule, for, as was said in the case of The Volund, supra:

"Nor can we assent to the proposition, which is earnestly contended for, that under charter parties of this sort there is some joint, two-headed navigation of the vessel which will put both parties in control."

I have therefore concluded that the decree in this case should find against the owners of the Allianca.