### HOLBROOK et al. v. FREEPORT SULPHUR TRANSP. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. June 12, 1924.)

No. 4096.

1. **Salvage ☞30—Double towage rate held adequate compensation for salving stranded oil barge.**

   Double towage rate *held* adequate compensation for salvage services rendered by a tug to a stranded oil barge, which was in protected waters and not in much danger, and there was no danger to the tug.

2. **Salvage ☞18—Tow, anchored during salvage work by tug, held not entitled to award.**

   Barges in tow, which were anchored while the tug went to the aid of a stranded vessel, which rendered no service and were not delayed because of the salvage service by the tug, held not entitled to a salvage award.

3. **Shipping ☞50—Charterer held estopped to assert liability of owner.**

   Under the charter of a tug providing that the master should be under the orders of the charterer and that the latter should indemnify the owner "from all consequences or liability that may arise from such orders," the charterer cannot hold the owner liable for the stranding of a tow while, under its orders, the tug was rendering a service not within the charter.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in admiralty by the Freeport Sulphur Transportation Company and others against the National Oil Transport Company and others, wherein T. J. Holbrook, as its trustee in bankruptcy, was substituted. Decree for libelant, and the trustee appeals. Modified and affirmed.

Eugie V. Parham, of New Orleans, La., and T. Catesby Jones and James W. Ryan, both of New York City, for appellant.

George H. Terriberry, Frazier L. Rice, W. W. Young, Jos. M. Rault, and Walter Carroll, all of New Orleans, La., for appellees.

Edouard F. Henriques, Sp. Asst. in Admiralty to U. S. Atty., of New Orleans, La., for the United States.

Before WALKER and BRYAN, Circuit Judges, and SIBLEY, District Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BRYAN, Circuit Judge. The District Court entered a decree for $3,400 against the National Oil Transport Company, appellant, for the salvage of its barge Bolikow. The barge was subsequently destroyed by an explosion, and the decree was based upon a libel in personam filed by the Freeport Sulphur Transportation Company, appellee. The appellant gave security, and brought in the United States under admiralty rule 56, as being liable by reason of its ownership of the tug Barryton, for the stranding of the Bolikow, and thus creating the necessity for the alleged salvage service. During the pendency of the suit, the appellant became bankrupt, and upon motion its trustee in bankruptcy was made a party.

In October, 1920, the appellee chartered the steam tug Barryton, owned by the United States, from the United States Shipping Board. The charter party was for 60 days, and authorized the use of the tug in towing the oil barge Bolikow between the ports of Tampico, Mexico, and Galveston. It provided that the owner should man and operate the tug, that the charterer should pay for pilotage, and that the master of the tug, although he was appointed by the owner, should be under the charterer's orders and direction "as regards employment, agency, or other arrangements, and the charterers hereby agree to indemnify the managers and operators [of the Shipping Board] from all consequences or liabilities that may arise from such orders."

On the morning of November 1 the Barryton arrived off Aransas Pass, having in tow the Bolikow, laden with a cargo of oil, for delivery at Aransas, Tex. The Bolikow was a wooden tank barge, 267 feet long, 46 feet beam, and, according to the testimony of her master, was drawing 21 feet. The channel through Aransas Pass was only 60 feet wide, and had a depth of 23 feet at high tide. Pilotage was compulsory. At the time of arrival, two pilots reported and stated that the tide was low, and that they would take the tug and tow inside at high tide. These pilots returned in the afternoon, when, according to the tide tables, the tide was high, and, while proceeding with one pilot on the tug and the other on the tow, through Aransas Pass, The Bolikow went aground at a sharp bend in the channel. The master of the Barryton, in giving his opinion as to the cause of the stranding, testified that, although he did not remember, he thought the Bolikow was drawing 22 feet, which he supposed was the depth of the channel. The wind was fresh from the north the next day, and had the effect of reducing by about 3 feet the depth of water in the channel. The Bolikow remained aground without any effort being made to float her until the 3d, during which time her master testified the depth in the channel ranged from 19 to 22 feet.

On the morning of the 4th appellee's tug Freeport Sulphur No. 2 arrived at the entrance of the channel, having in tow two of appellee's barges, with cargoes of oil, known as Freeport Sulphur No. 3 and Freeport Sulphur No. 4; also bound for Aransas. The Freeport Sulphur No. 2 anchored her barges and proceeded to the point where the Bolikow was aground, and found the channel sufficiently blocked to prevent the passage of oil barges. The master of the Bolikow testified that the master of the Freeport Sulphur No. 2 agreed to assist

in floating the Bolikow, in consideration of an agreement made by that witness that the Freeport Sulphur barges should take the Bolikow's turn at the unloading wharf. This testimony was contradicted by both the master and the chief mate of the Freeport Sulphur No. 2, who testified that they offered their tug's assistance and that it was accepted without terms. The wharf at which the Bolikow was to be unloaded was not the same as the wharf at which the Freeport Sulphur barges were to be unloaded. The Freeport Sulphur No. 2 and the Barryton pulled on the Bolikow from 8:45 in the morning of the 4th until they floated her at 7:50 that evening. The Freeport Sulphur No. 2 then anchored in the turning basin about 1,200 feet away. The Bolikow almost immediately went aground again, 500 or 600 feet further up, and on the opposite side of, the channel. As the channel was not marked by range lights, the Freeport Sulphur No. 2 remained in the turning basin until 6 o'clock the next morning, when it proceeded again to the Bolikow, and with some assistance from the Barryton succeeded in getting her afloat at about 2 o'clock in the afternoon, and then towed her to the dock at Aransas, and brought in her own barges, one that afternoon, and the other the next morning. The tug Baddacock, also owned by the appellant, arrived off Aransas Pass with an oil barge on the 4th, and lent some assistance during a portion of that day. She was available for service on the 5th, but was not used.

The Bolikow went aground inside the breakers, was protected by the jetties, and was in a reasonably safe place. During the whole time she was aground the weather was good. There was evidence that other vessels had been wrecked at Aransas Pass, but they were further out and in more exposed positions, or had stranded on an old sunken mat. The values indicated by the testimony were: The Bolikow and cargo, $270,000; The Freeport Sulphur No. 2, $250,000; and Freeport Sulphur barges No. 3 and No. 4, and their cargoes, $500,000.

The District Judge allowed $1,200 as expenses of the tug for two days, to which he added $1,000 as salvage. He also allowed expenses for two days to the Freeport Sulphur barges No. 3 and No. 4 of $1,200, making a total award of $3,400, as already stated, and found in favor of the United States. This appeal is taken on the grounds: (1) That the alleged salvage service was rendered as consideration for an agreement by appellant that the appellee should have precedence in the matter of unloading cargo; (2) that the court erred in allowing for expenses of appellant's barges; and (3) that the decree should have been against the United States, because it was negligence on the part of the pilots and the Barryton's master to take the Bolikow into Aransas Pass at a stage of the tide when the water in the channel was of insufficient depth, and that such negligence was chargeable to the United States as owner of the Barryton.

1. We agree with the District Judge that no contract for salvage was shown by the preponderance of the evidence. Both the master and the chief mate of the Freeport Sulphur No. 2 directly and positively contradicted the master of the Bolikow, and their testimony is strongly corroborated by the circumstance that appellee's barges were

not consigned for unloading to the same dock or wharf as was appellant's barge.

[1] 2. In our opinion, the assistance rendered constituted salvage service of a low order. The values involved were considerable, but the danger was very slight. Appellant's barge was inside the jetties, and it had safely passed the point where several other vessels were wrecked. Nevertheless, a large vessel aground so near the sea is always in some danger. There was no danger at all to appellant's tug; safe anchorage was immediately at hand. Under all the circumstances, double the towage rate is full compensation. The Jean L. Somerville (C. C. A.) 286 Fed. 35; Magnolia Petroleum Co. v. National Oil Transport Co. (C. C. A.) 286 Fed. 40; City of Portland, 298 Fed. 27 (decided by this court February 23, 1924). That is practically the amount the District Judge awarded to the tug.

[2] The Freeport Sulphur barges rendered no assistance and we think allowance to them for expenses was erroneous. Their arrival at Aransas was not delayed by the salvage service rendered by the tug which had them in tow. A delay was caused by the blocking of the channel, but this suit is for salvage and not for negligence. It is not to be seriously doubted that the Barryton, with the assistance of appellee's tug Baddacock, would have been able to float the Bolikow. If appellee's tug had rendered no assistance, obviously there could be no claim for salvage, and yet the delay to the barges would probably have been greater than it was.

3. The United States, as owner of the tug Barryton, is sought to be held liable for negligence of the master of that tug and of the pilots, one of whom served the tow, on the theory that there had been no demise of the tug, but that she remained under the control of her owner. In support of this position the appellant relies upon The Volund, 181 Fed. 643, 104 C. C. A. 373, The Beaver, 219 Fed. 139, 135 C. C. A. 37, and The Allianca (D. C.) 290 Fed. 450, in which, under quite similar, though not identical, charter parties, the owners were held liable for negligence chargeable to their tugs.

Assuming that these cases state the correct rule, we think the evidence in this case is insufficient to support the conclusion that either the master of the Barryton or the pilots were guilty of negligence. All that was required of the tug was "that degree of caution and skill which prudent navigators usually employ in similar services." The J. P. Donaldson, 167 U. S. 599, 17 Sup. Ct. 951, 42 L. Ed. 292. It is pure assumption that the depth of the channel was inadequate. The testimony is that the Bolikow went aground at a sharp bend and on the side of the channel. It was the day after the vessel was aground, and after the usual depth had been lowered by the wind from the north, that the master of the Bolikow claims to have sounded and found a depth as low as 19 feet. What the stage of the tide was is not shown. The testimony of the Barryton's master as to the depth of the channel was mere conjecture. The result is that the negligence asserted is not shown by the evidence.

[3] Aside from the question of negligence, the appellant, as it appears to us, is estopped to insist that the owner of The Barryton

is liable. The charter party only authorized towage between the ports of Galveston and Tampico. So far as is shown by the record, it was a violation of the charter party to undertake to tow the Bolikow into Aransas Pass. It does not follow, because the owner of the Barryton was willing to charter her to tow between Tampico and the safe harbor of Galveston, that it would have entered into a charter party for towage between Tampico and Aransas, through the narrow, unlighted, and dangerous channel at Aransas Pass. To permit the appellee to pass its liability on to the United States, as owner of the Barryton, would be to allow it to take advantage of its own wrong.

Under the authorities relied on by the appellant, especially Pacific Improvement Co. v. Schubach-Hamilton Co. (D. C.) 214 Fed. 854, the master of the Barryton, under the terms of the charter party, was subject to its charterer's orders as to the ports to be made. The stranding of the Bolikow was a consequence of the attempt to get it to Aransas Pass, as ordered by the Barryton's charterer. The latter expressly agreed to indemnify the owner "from all consequences or liabilities that may arise from such orders." The court's refusal to hold that the owner of the Barryton was liable is sustainable on the ground that the only party asserting that liability is under a contract obligation to indemnify the owner against such liability. The charter party is effective to prevent the successful assertion of such a liability by the charterer against the owner, whether it would or would not stand in the way of a stranger holding the owner liable for a fault of its tug which was committed while it was rendering a service not called for by the charter party.

The decree in favor of the libelant is modified, by reducing the amount of the award from $3,400 to $2,200, and, as so modified, it is affirmed. The decree in favor of the United States is affirmed. Because of the reduction of the award, the costs of this appeal will be assessed against the Freeport Sulphur Transportation Company.

Modified and affirmed.