---

## THE VIGO.

### (District Court, S. D. New York.   April 5, 1919.)

1. SHIPPING ☞47—CHARTERS—CONSTRUCTION—WHARFAGE.

Under a clause of a charter party requiring the ship to deliver her cargo alongside any wharf or pier designated by charterer, she cannot be required to pay wharfage for use of a designated pier after her cargo has been discharged thereon.

2. SHIPPING ☞47—CHARTERS—CONSTRUCTION—"PORT CHARGES."

Under a charter party requiring the charterer to pay expense of discharging, and the ship to pay all port charges as customary, and to deliver the cargo alongside any wharf or pier designated by charterer, port charges for which the ship is liable include the cost of her berth while discharging, although alongside a private pier, but not the charge for use of the pier for receiving the cargo.

[Ed. Note.—For other definitions, see Words and Phrases, Port Charges.]

In Admiralty.   Libel in rem against the steamship Vigo.   Decree for libelant.

This is a suit in rem against the steamer for breach of a provision in the charter party entered into on the 24th day of March, 1917.   The charter party was for a voyage from Palamo, Spain, to the port of New York and the libelant, who was the charterer, paid a bill for wharfage at Stapleton Pier, Staten Island, for a period of 6 days, during which the Vigo was discharged and her cargo lay on the pier.   The total amount paid by the libelant was $729.   The ship occupied only one day in discharging, and the remaining part of the charges were for the use of the pier while the cargo remained there.

The charter party contained the following clauses: The ship shall "deliver the same [cargo] alongside any craft, steamer, floating depot, wharf or pier as ordered by the charterer."   Again: "Expenses for loading and unloading shall be at charterer's expense."   Again: "Steamer to pay all port charges and pilotage on ship at ports of loading and discharge as customary."   The libelant contended that the ship should pay the whole bill for wharfage.

Haight, Sandford & Smith, of New York City, for libelant.
Kirlin, Woolsey & Hickox, of New York City, for claimant.

LEARNED HAND, District Judge.   [1] Under the clause which requires the ship to deliver the cargo alongside any wharf or pier, the ship's obligation terminated as soon as the cargo was landed upon the wharf.   In no aspect can any wharfage charged thereafter be on the ship's account and the maximum which the libelant can recover

would therefore be one day's wharfage, $115, together with the lighting charges, $20, for the night in question.

[2] The only question which remains is whether these are proper charges against the charterer or the ship. Both parties agree that without any other stipulation in the charter party wharfage is a proper charge against the ship, and the undisputed testimony here is that such is the universal custom of the port. Two clauses alone control the liability. The first is, "Expenses for loading and unloading ship at charterer's expense;" and the second, "Steamer to pay all port charges and pilotage on ship at ports of loading and discharge as is customary." If this be a "port charge," it would be on the ship's account, in spite of the first clause, because to give both clauses complete effect the first ought to be interpreted as meaning expenses for loading and unloading other than "port charges." Now, that phrase appears to me to cover such dues as are imposed upon the ship for the privilege of entering the port and remaining at those berths, to which the charterer may lawfully direct her to repair, till the completion of the charter party. Obviously, it would include any charges for entering the limits of the port, and if the charterer elected to discharge by lighters it would include all charges for a berth upon a public anchorage, if there were any such. Similarly, if the charterer ordered her to a public wharf, for lying at which there was a charge, she must bear that, too. If, however, as in this case, he lawfully orders her to a private wharf, the cost of her berth appears to me to be the same thing. It is the cost of her presence in the port, collected, it is true, not by public authorities, but by those who have the right from those authorities to offer such berths to vessels in the port. In so far, therefore, as the change represents only the cost of the berth, as distinct from the use of the wharf to discharge the cargo, I am clear that it is a "port charge."

The "expenses for loading and unloading" are distinguishable. Normally, the ship under a charter like this must discharge over her rail, and the charterer must accept delivery from the ship's tackles, for that is a delivery "alongside" which the ship undertakes, and all that she undertakes. In this charter party these rights are varied, in that the charterer agreed to pay for the discharge, using the ship's tackles and winches; but that clause only covers, I think, the actual movement of the cargo from the holds to the wharf. Whatever that cost, the charterer must pay it, just as he must pay for the reception of the cargo and its storage on the wharf. The expenses of discharge do not, however, cover the cost of the ship's berth, because her berth is not necessarily connected with her discharge. For example, it might be necessary to secure a berth before she could discharge at all.

In principle the ship should bear only so much of the wharfage during her discharge as is attributable to her berth; the charterer, the balance. This is by no means a fictitious distinction, for there are different charges actually made in the port of New York for these privileges. It appears to me that under a charter such as this the difference should be observed when the custom of the port makes such a distinction. I hold, therefore, that the ship is chargeable only with

the customary berthing charge for one day, but not with so much more, though included in one sum, as is charged for berthing, together with the use of the wharf to receive the cargo for the same time. This second element is certainly no more chargeable to the ship than the hire of lighters, were the discharge by lighters. It also follows that the charge for lights is on charterer's account.

The only case in point to which I have been referred is a judgment of Lord Sumner (while Hamilton, J.), in Societa Anonima, etc., v. Hamburg, etc., Gesellschafft, 17 Com. Cas. 216, with which my decision accords, though it must be conceded that the case is not strictly in point here. There the charter contained the following clause:

"The charterer paying all dues and duties on the cargo, and the steamer all port charges, pilotage, etc., as is customary."

Hamilton, J., thought that these two alternatives were exhaustive, and that the charges in question must be either dues and duties on the cargo or port charges. The charterer wished to throw upon the ship the dues at the port of discharge for the use of the quays and for dredging and clearing away obstructions from the port. Apparently these charges were of a semiofficial character, and I own that it is hard to see how they could in any event have been held to be "dues and duties on the cargo." The force of the case for this purpose is therefore much broken by the exhaustive character of alternatives in the charter, yet I think it none the less has some force here, especially in view of the very high authority of all judgments by Lord Sumner.

The libelant may therefore take a decree as indicated above, but without costs.