## THE WESTHAVEN.

### OLD DOMINION S. S. CO. v. UNITED STATES.

(District Court, D. Maryland. April 5, 1924.)

#### No. 1159.

Maritime liens ⬤⟞65—Evidence held to show that libelant failed to exercise reasonable care in ascertaining condition of title.

In a libel under Act March 9, 1920 (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼ɭ), and Act June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8146¼ et seq.), in which libelant claimed a maritime lien superior to the title of the United States, who had recently sold the vessel libeled under a contract providing for partial payment and prohibiting buyer from giving a lien on the vessel superior to the title of the United States, evidence *held* to show that libelant, relying on buyer's statement of ownership and furnishing the mentioned services to buyer, failed in his duty of exercising reasonable diligence in ascertaining the facts as to the condition of the title.

In Admiralty. Libel by the Old Dominion Steamship Company, against the United States, as the owner of the steamship Westhaven. Libel dismissed.

John Henry Skeen and Emory H. Niles, both of Baltimore, Md., for libelant.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md.

Stuart S. Janney, of Baltimore, Md., for trustee in bankruptcy of the Atlantic, Gulf & Pacific S. S. Corporation.

SOPER, District Judge. The libelant brings suit against the United States, as owner of the steamship Westhaven, under the Suits in Admiralty Act of March 9, 1920 (41 Stat. 525 [Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼ɭ]), claiming a maritime lien on the steamship for berthing and wharfage space, and stevedoring services in discharging and taking on cargo furnished in New York City in July, 1921, by libelant, at the agreed price of $11,334.96 at the request of the person in charge of the vessel.

At that time there was outstanding a contract, dated January 19, 1921, whereby the United States agreed to sell, and the Atlantic, Gulf & Pacific Steamship Corporation agreed to buy, the steamer at a fixed price, in which contract it was provided that, when 50 per cent. of the purchase price was paid, the United States would give the buyer a bill of sale, and the buyer would simultaneously execute a mortgage thereon to the United States. The contract also provided that, pending the transfer of title of the vessel to the buyer, the buyer would not suffer any lien or charge having priority to the title of the seller in the vessel, but would pay and discharge all lawful claims which might have pre-

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cedence over the title of the seller as a lien or charge against the vessel. It was further provided that a copy of the contract should be carried with the ship's papers.

The libelant claims that by virtue of the services rendered it acquired a maritime lien upon the vessel, which has precedence over the title of the United States, under the provisions of the Act of June 5, 1920 (41 Stat. 988, c. 250 [Comp. St. Ann. Supp. 1923, § 8146¼ et seq.]), and particularly section 30, subsection R, thereof (Comp. St. Ann. Supp. 1923, § 8146¼pp), wherein it is provided:

"That nothing in this section shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

It has been decided in the case of United States v. Carver, 260 U. S. 482, 489, 43 Sup. Ct. 181, 67 L. Ed. 361, that under the section quoted the furnisher of supplies may not rest upon presumptions until he is put upon inquiry. He is called upon to inquire, and if, by investigation with reasonable diligence, he can find out that the vessel is under charter or contract of sale, he is chargeable with notice of its terms. This obligation resting upon the libelant it claims to have fulfilled in the following manner:

In April, 1921, the president of the libelant company made inquiry of the general agent in charge of the office of the Atlantic, Gulf & Pacific Steamship Corporation in New York as to the ownership of the vessel, and was informed that the company owned the Westhaven and four other vessels. In the early part of June, 1921, before the services in question were rendered, the general agent, president and vice president of the Atlantic, Gulf & Pacific Steamship Corporation visited the libelant's office in New York City, and, upon inquiry by its president, the assertion was again made that the Westhaven was owned by the Atlantic, Gulf & Pacific Steamship Corporation. These two interviews constitute the sum total of the efforts on the part of the libelant to ascertain the authority of the person in charge of the vessel to charge its credit.

Whether or not there was a sufficient compliance with the duty of the libelant to make inquiry depends in this case upon the circumstances under which the inquiry was made, and the knowledge which the libelant had. The president of the libelant company, who personally made the inquiries, was Mr. Herbert B. Walker, who had been its president and general manager since 1907, with offices in New York City. Between the years 1910 and 1920 the company ran ships between New York and Norfolk, and from 1920 until the circumstances which gave rise to this case the company, having suspended operations and sold its vessels, was engaged in selling wharfage and other services to steamships in New York City. During the war Mr. Walker was the Director of Shipping at Hampton Roads, under the Shipping Contract Committee of the United States Army. He was later with the United States Railroad Administration as Federal Manager of the Coastwise Trade for one year. From his experience in maritime matters, and from publications in the daily papers, he was familiar in a general way with the

policies of the United States Shipping Board, including the sale by it of ships which it had built during the war, under contract for partial payment on easy terms by the buyers. He knew that the Atlantic, Gulf & Pacific Steamship Corporation was a new concern, and that a number of such companies had been formed after the war, and had acquired ships from the Shipping Board. He supposed that the ships which it claimed to own had been acquired by it from the Shipping Board, since it was common knowledge that there was no other source from which such tonnage could be gotten.

In view of the fact that Mr. Walker must have had all of these facts in mind, it is hard to understand why he was satisfied with the general statement of the officers of the steamship company that it owned the vessel. Believing that the vessel had been recently acquired from the United States by a new company, and in all probability on a partial payment plan, it was plainly a matter of ordinary prudence to have pursued the inquiry further, and to have definitely ascertained what right the purchaser had to charge the vessel. Leaving out of account the opportunity which he had between April or June, 1921, and July, 1921, when the services were furnished, to inquire at the office of the United States Shipping Board in Washington, or the New York office which it is alleged the Shipping Board had at 45 Broadway, the failure of the libelant to secure more detailed information from the persons seeking its services constitutes evidence of negligence on its part.

The claim of ownership on the part of the officers of the Atlantic, Gulf & Pacific Steamship Company, made in general language in the course of a conversation between business men, was not unnatural, in view of the contract of purchase which it had made, but it was not such an answer as should have been accepted as full and satisfactory. The investigation stopped at the very point at which useful information could have been elicited.

It follows that the libelant failed in its duty of reasonable diligence to ascertain the facts, and the libel must therefore be dismissed.