## THE CAPITAINE FAURE.

(District Court, E. D. New York. July 28, 1924.)

**1. Shipping ⬅⟶41—Time charter held not to make charterer owner.**

Time charter of steamship, requiring owner to provide and pay for all provisions and wages, for insurance of steamer, for all deck and engine room stores, and to maintain her in efficient state, and requiring charterer to provide and pay for all port charges, dock and other duties and charges, and all other charges and expenses whatsoever, *held* not to make charterer owner, as that condition would arise only under a demise.

**2. Shipping ⬅⟶50—Charterer, under charter not constituting him owner, lacked authority to bind ship.**

Charterer of ship, under a time charter which did not make him owner, lacked authority to bind ship in making contract with owner of pier for its use by the ship.

**3. Wharves ⬅⟶18—Maritime lien will arise for wharfage furnished to ship at request of any one authorized to bind ship.**

Maritime lien will arise for wharfage furnished to ship at request of any one authorized to bind ship.

**4. Shipping ⬅⟶50—Acts of master of ship held not ratification by ship of contract of charterer for use of pier.**

Acts of master of ship under time charter, in obeying orders of charterer in bringing ship to pier charterer selected, under personal contract with libelant as owner of pier, *held* not a ratification by ship of such contract with libelant.

**5. Wharves ⬅⟶17—Owners of privately owned wharf were not bound by any rates fixed by statute.**

Owners of privately owned wharf were not bound by any rates fixed by statute, but could make any rate which was satisfactory to the contracting parties.

**6. Wharves ⬅⟶18—Contract for use of wharf could not bind ship, unless party contracting had authority to bind ship.**

Contract for use of wharf could not bind ship, unless party contracting had authority to bind ship.

**7. Wharves ⬅⟶18—Use of reasonable diligence to ascertain authority of charterer to make contract for ship for use of pier held imposed upon owner of pier.**

Where charterer under a time charter contracted with libelant as private owner of wharf for use of its pier, it was the duty of libelant to use reasonable diligence to ascertain whether charterer had authority to make a contract for use of pier, binding on the ship.

**8. Wharves ⬅⟶18—Maritime lien held not created against ship under time charter, for use of libelant's pier.**

Maritime lien *held* not created against ship under time charter, for use of libelant's pier, under a contract with charterer, not authorized by the ship or ratified by the master in behalf of the ship.

**9. Wharves ⬅⟶17—Ship, using libelant's dock under charterer's contract with libelant for specific price, held not liable to anything but fair and reasonable value of service rendered by libelant.**

Ship under time charter, using libelant's dock under charterer's contract with libelant for specific price, *held* not liable to anything but fair and reasonable value of service rendered by libelant, in the absence of a showing that the contract for use of the pier was made by one having authority to bind the ship.

In Admiralty. Libel filed by the New York Dock Company against the Steamship Capitaine Faure, Société Navigation de Vapeur (France Indo-Chine), claimant. A decree of dismissal with costs advised.

Decree affirmed 7 F.(2d) 133.

Davies, Auerbach & Cornell, of New York City (Charles E. Hotchkiss and Alexander J. Feild, both of New York City, of counsel), for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for claimant.

CAMPBELL, District Judge. On March 31, 1923, the claimant, by a charter party in

writing, executed at New York, chartered the said steamship Capitaine Faure to Reuben I. Cameron, of New York, for the period of 6 months, and placed the said steamship at the disposal of said Reuben I. Cameron, who accepted the same at Newport, England, April 9, 1923.

The said charter party was the uniform time charter, and contained among others the following provisions:

"(2) Owners to provide and pay for all provisions and wages, for insurance of the steamer, for all deck and engine room stores and maintain her in a thoroughly efficient state in hull and machinery during service. Owners to provide one winchman per hatch. * * *

"(3) Charterers to provide and pay for all * * * port charges * * * dock and other dues and charges, * * * and all other charges and expenses whatsoever."

On April 9, 1923, Reuben I. Cameron entered into an agreement with the libelant, which it confirmed in writing, for the use of its pier 46 by the steamship Capitaine Faure, and the said charter party was then in the possession of said Reuben I. Cameron.

The steamship Capitaine Faure docked at the pier about May 4, 1923, pursuant to the direction of said Reuben I. Cameron, and the charter party was in the possession of the master on said ship.

The steamship Capitaine Faure was a French vessel owned by Société Navigation de Vapeur (France Indo-Chine).

[1, 2] The said Reuben I. Cameron was not the owner of said steamship Capitaine Faure pro hac vice under the time charter, as that condition would only arise under a demise (Leary v. United States, 81 U. S. [14 Wall.] 607, 20 L. Ed. 756; The Volund, 181 F. 643, 104 C. C. A. 373), and therefore did not have authority to bind the ship. The lack of authority of Mr. Cameron to bind the ship could have been ascertained by the libelant at the time of making the contract with him, because he had possession of the charter party at that time.

The contract for the use of the dock was made with Mr. Cameron personally, and not with the ship nor with Mr. Cameron as representing the ship, and the ship was then in England. Under these circumstances it is difficult to see how this contract could have been made relying upon the security of the ship, which might never have arrived at the pier.

[3, 4] A maritime lien will arise for wharfage furnished to a ship at the request of any one authorized to bind the ship, but Mr. Cameron was not authorized to bind the ship, and the master was simply obeying the orders of Mr. Cameron in bringing the ship to the pier which Mr. Cameron had selected, and such act was not a ratification by the ship of the contract made by Mr. Cameron.

[5-8] The wharf in question was a privately owned wharf, and the owners were not bound by any rates fixed by statute, but could make any rate which was satisfactory to the contracting parties, but such contract could not bind the ship, unless the one hiring the wharf had authority to bind the ship, and it was the duty of the libelant to use reasonable diligence to ascertain that fact. The Westhaven (D. C.) 297 F. 534, 1924 A. M. C. 681. The libelant did not make diligent inquiry, but relied upon the responsibility of Mr. Cameron and not of the ship.

The instant case is clearly distinguishable from the case of a ship tying up at a public or private wharf, without any prior agreement, or upon an agreement then and there made with the master, in which event the rendition of the service for the benefit of the ship would of itself be sufficient to create a maritime lien, because in the instant case these private owners made an agreement with an individual long before the arrival of the ship which was wholly for his benefit and not for the benefit of the ship, without making the slightest effort to ascertain what authority, if any, he had to bind the ship, and while the ship itself was in a foreign country, and without making any effort to ascertain from the master of the ship on its arrival the right of Mr. Cameron to bind the ship, or to have the master ratify the contract on behalf of the ship.

The ship was under a time charter to Mr. Cameron, and it was a matter of no moment to the owner whether she anchored or docked, as charter hire was payable for the time, regardless of use, and therefore it seems to me that the essential fact of benefit to the ship is lacking to create the lien.

[9] This action is not brought to recover the fair and reasonable value of the services rendered by the libelant, but to recover on a specific contract made by it with Reuben I. Cameron, and, even if I am wrong in finding that no maritime lien was created, the libelant cannot recover on the libel filed in this action, because, if the ship was subject to a maritime lien solely because she tied up to the dock, she could not be held liable to anything but the fair and reason-

able value of the service rendered, without showing that the contract for a specific price was made by one who had authority to bind the ship.

In my opinion the contract with Mr. Cameron was personal, the ship was not bound by the contract, and that on the facts proven in this case no maritime lien was created in favor of the libelant.

A decree may be entered dismissing the libel with costs.