## THE IOANNIS VATIS.

### VATIS v. DEXTER & CARPENTER, Inc.

(District Court, S. D. New York. July 6, 1926.)

I. **Wharves ☞18—Under charter party, vessel held liable for wharfage incident to occupation of berth, but not for wharfage incident to use of wharf for cargo.**

Where charter party provided, "The freight is in full of trimmings, and all port charges, pilotages, and consulages on the vessel; all wharfage dues on the cargo to be paid by the charterers," *held*, vessel was liable for wharfage incident to occupation of berth, but not for wharfage incident to use of wharf for cargo.

2. **Shipping ☞50—Defense of voluntary payment by charterer held not available to vessel, in libel for wharfage charges paid.**

Defense of voluntary payment by charterer *held* not available to vessel, in libel for wharfage for which vessel was liable under charter party.

3. **Wharves ☞18—Vessel held liable, under contract made by charterer's agent, for wharfage incident to occupation of berth.**

Master of vessel, liable under charter party for wharfage incident to occupation of berth, by occupying wharf secured by charterer's agent, made vessel liable on reasonable contract for wharfage made by libelant as charterer's agent.

In Admiralty. Libel by Dexter & Carpenter, Inc., against the steamship Ioannis Vatis, etc., in which respondent filed a cross-libel. Decree for libelant in accordance with opinion.

Haight, Smith, Griffin & Deming, of New York City, for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Earl Appleman, of New York City, of counsel), for claimant and cross-libelant.

AUGUSTUS N. HAND, District Judge. [1] The charter party in this case provided that: "The freight is in full of trimmings, and all port charges, pilotages, and consulages on the vessel. All wharfage dues on the cargo to be paid by the charterers." This clause clearly renders the vessel liable for wharfage incident to occupation of a berth and excludes liability of the vessel for wharfage incident to the use of the wharf for cargo.

In The Vigo (D. C.) 257 F. 586, where the charter party read, "Steamer to pay all port charges, * * *" Judge Learned Hand held that the ship was responsible for the use of the wharf for berthing, but the charterer was to pay for the use of it to receive the cargo. He followed the eminent authority of Lord Sumner (then Hamilton, J.)

in Societa Anonyma, etc., v. Hamburg South American S. S. Co., 17 Com. Cas. 216.

Subdivision "six" of the agreed statement of facts stipulates that "libelant employed the National Stevedoring Company in New York to discharge the cargoes into lighters," so that there was no wharfage due from any one on the cargo.

It is argued that this case differs from The Vigo, supra, because of the language of subdivision 8 of the charter party here, which provides that: "The cargo * * * be taken from alongside by consignees at port of discharge, free of expense and risk to the steamer, at the average rate of 750 tons per day. * * * Consignees to effect the discharge of the cargo, steamer paying 40 cents per ton of 20 cwt., or 1,015 kilos, and providing only steam, steam winches, winchmen, gins, and falls."

This clause seems to relate only to expenses connected with unloading, and has no bearing whatever upon wharfage, except as it may be incident to the lading of cargo on the wharf. It goes little farther than the clause in the Vigo's charter: "Expenses for loading and unloading shall be, at charterer's expense."

[2] Two questions remain affecting libelant's claims. The first is as to the defense of voluntary payment, and the other as to the amount of wharfage due. I do not regard the defense of voluntary payment as available. Subdivision 9 of the charter, as well as the customary way of doing business, indicate that the charterer may make payments chargeable under the contract to the owner and collect them from the latter. That subdivision reads in part as follows: "The charterers' account at port of loading to be paid when rendered; otherwise the charterers may deduct it on settlement of freight at port of destination."

[3] It may be, however, that the charterer is allowed to make payments for the account of the ship and yet cannot contract for her. But when the master occupied the wharf secured by the charterer he took something which the owner of the vessel was bound under the charter to pay for, and subjected the ship to a maritime lien based upon the reasonable contract for wharfage which the charterer's agents had made. If he had not wished to do this, he should have inquired about the arrangement to pay at the rate of $50 per day. In the circumstances, I think the libelant, who acted for the charterer, was agent for the owner pro hac vice.

The decision in The Capitaine Faure (D. C.) 7 F.(2d) 131, 1924 A. M. C. 1137, affirmed (C. C. A.) 7 F.(2d) 132, is not in point, because there the charter party required "charterers to provide and pay for all * * * port charges, * * * dock and other dues and charges, * * * and all other charges and expenses whatsoever." Here the port charges were a liability of the owner under the charter party.

The opinion of Judge Hough in The Southern Cross (C. C. A.) 10 F.(2d) 699, 1926 A. M. C. 415, also does not govern. There the question considered was whether the owners of private wharves in New York Harbor, by publishing rates greater than those fixed by statute and local ordinance, obtained a lien for more than the statutory rates, in the absence of a special agreement by vessel occupying their wharves to pay the higher rates. The question was answered by the Circuit Court of Appeals in The Southern Cross, supra, in the negative. In the case at bar a special contract was proved, and the wharfinger would not have received the vessel without it.

A decree is granted to the libelant for the agreed wharfage. The issues presented by the cross-libel are disposed of as indicated at the trial.

Settle decree on notice.