## THE HENRY W. CARD.
## THE TENAS.
### No. 16471.

District Court, E. D. New York.
June 28, 1943.

Macklin, Brown, Lenahan & Speer and Semmes, Bowen & Semmes, all of New York City, and Lord & Whip, of Baltimore, Md. (Paul Speer, of New York City, and George W. P. Whip, of Baltimore, Md., of counsel), for libellant.

Foley & Martin, of New York City (J. A. Martin and C. E. Heckman, both of New York City, of counsel), for claimant.

ABRUZZO, District Judge.

This action was instituted by the libellant to recover the sum of seventy-five thousand and no/100 ($75,000.00) dollars damages, arising out of the stranding of the barge "Tenas" on Conch Reef, about sixty miles south of Miami, Florida, while in tow of the tug "Henry W. Card", on November 26, 1941.

The issue of fact was not tried, there having been a stipulation as to the facts involved, which has been received in evidence as Exhibit No. 1.

It is undisputed that in the early morning of November 26, 1941, while the "Henry C. Card" was towing the "Tenas", loaded with phosphate rock, off the east coast of Florida, in good weather, the tug caused the "Tenas" to run aground and strand on Conch Reef. The tug was able to work herself free, but the "Tenas" was so stranded that the tug could not float her.

It is uncontradicted that the stranding of the barge "Tenas" was caused by the Master of the tug mistaking the identity of a lighthouse, as a result of which the tug changed her course too soon and the true location of the tug was not learned until after she had stranded herself and the barge.

The "Tenas" remained aground on the reef for two days and a half and was finally pulled off by another tug. The "Henry W. Card" then towed the "Tenas" to Key West, Florida, where she was inspected and surveyed and damage found. Upon the recommendation of the surveyor, the tug proceeded with the barge to Baltimore, Maryland, where she arrived on December 10, 1941, and discharged her cargo on December 11, 1941.

Thereafter, the tug, "Henry W. Card", towed the "Tenas" to Norfolk, Virginia, where she arrived on December 15, 1941 for repairs.

At the time of the occurrence of this unfortunate stranding, the "Henry W. Card", owned by the claimant, the Card Towing Line, Inc., was in the service of the libellant under the terms of a written charter party, copies of which are annexed to the libel and to the stipulation of facts.

The agreement refers to the libellant as the "charterer" and provides that the libellant hired the tug "Henry W. Card" for a period of one year, commencing June 16, 1941, for the purpose of towing two barges owned by the libellant between United States Atlantic Coast Ports and/or United States Gulf Ports. The barges were to be the "Tenas" and the "Portsmouth" or substitutes.

The libellant was obligated to pay claimant monthly hire.

Paragraphs "Third" and "Fourth" of the agreement provide that the claimant, owner of the tug, should at its own expense provide and pay wages and all operating expenses, and that the vessel should always be tight, staunch, strong and carry a full complement of officers and crew for the performance of the agreement.

The "Eighth" paragraph provided that in the event of the loss of use of the tug to the libellant, including stranding, payment of hire should cease for the time lost thereby.

Paragraph "Tenth", obviously the "bone" of contention herein, reads as follows: "Tenth: Acts of God, enemies, fire, restraints of Princes, rulers and peoples, strikes, riots and civil commotions, takings at sea and all other dangers and accidents of the seas, rivers and harbors, machines, boilers and navigators and errors of navigation, latent defects and unseaworthiness, not resulting from Owner's failure to use due diligence, always mutually excepted."

The libellant claims that it is clear under these provisions that the charter party did not constitute a demise of the tug to the charterer and, consequently, the navigation of the tug during the time of charter was in the hands of the owner, and unless there was a specific exemption in the charter party, the owner would be liable for all the results of negligent navigation. The Volund, 2 Cir., 181 F. 643.

That this is the rule cannot be questioned since it was adopted in many cases. The Beaver, 9 Cir., 219 F. 139; The Allianca, D.C., 290 F. 450; Luckenbach v. Insular Line, 2 Cir., 186 F. 327.

Paragraph "First" of the charter party refers to the libellant as the charterer and to the claimant as the owner of the tug. Paragraphs "Third" and "Fourth" relate to the use of the tug and the wages and operating expenses to be paid by the claimant, as well as to the duty of the claimant to keep the tug tight, staunch and strong.

The "Seventh" paragraph relates to the intention of the charterer to use the tug to tow barges.

Paragraph "Eighth" provides that the loss of the use of the tug to the charterer

from various causes should result in the ceasing of payment of hire for the time lost.

■ The language of the charter party undoubtedly constitutes a demise of the tug to the libellant. It is not in its nature a towing contract.

The charter party in the instant case, because of the provisions just referred to, is clearly distinguishable from the charter party which was at issue in the case of Clyde Commercial S. S. Co. v. West India S. S. Co., 2 Cir., 169 F. 275, cited by the libellant. That decision held that the charter party did not amount to a demise. It must be borne in mind that there was but one single covenant in that charter party, to wit, the covenant to pay hire.

The libellant advances the further argument that even if the charter party amounted to a demise, since paragraph "Seventh" sets forth the mutual rights and obligations as to the use and termination of the use of the tug, paragraph "Tenth" applies only to the use of the tug and would not relieve the claimant from responsibility for damages caused by an error of navigation or negligent navigation.

The libellant contends that paragraph "Tenth" should only be held to relieve the claimant from responsibility in keeping the tug in "a thoroughly efficient state in hull, etc.", and to relieve the charterer from its obligation to pay hire in the event the tug was laid up because of damage due to errors of navigation.

The libellant then makes the general claim that even if the term "errors of navigation" is construed to mean the negligent errors of navigation, the exception does not apply to the damage sustained in this case.

■ The Court cannot agree with the position taken by the libellant that because paragraph "Seventh", read together with paragraphs "First", "Third", "Fourth" and "Eighth", sets forth the mutual rights and obligations of the use of the tug, it would in any way tend to limit the construction of the words used in paragraph "Tenth". This paragraph, by its language, intended to limit the responsibility of the claimant because of errors of navigation whether the libellant or claimant was in control of the operation of the tug. It was the intention of the parties to relieve the owner from errors of navigation.

■ The charter must be construed to restrict the liability of the tug. Towage does not involve bailment nor can the doc-trine be applied that tugs are common carriers, serving the public according to their capacity. There is no rule of public policy which denies effect to the expressed intention of an agreement, but on the contrary, the matter lies within the range of permissible agreement. Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311.

In libellant's reply memorandum, it is stated: " * * * we are not contending that a tug may not contract to relieve itself from its own negligence, although this argument, it seems to us, might now be made, in view of the modern tendency to treat a tug as a common carrier. * * * However, we do not make that contention here, except that we do say that a tug cannot be released from liability for damage caused by its own negligence, unless there is an express covenant to that effect."

In The Primrose, D.C., 3 F.Supp. 267, the parties had agreed by contract that the tug should not be liable for negligent damage. This clause was sustained.

■ In the matter of The Interports No. 767, 92 F.2d 601, the Circuit Court of Appeals for this circuit sustained a clause exactly similar to the one at bar. That charter party contained a clause relieving the respondent from loss or damage caused by "errors of navigation". It was held that the words "errors of navigation" must be construed to mean the negligence or negligent navigation of the towing vessels, citing Berwind-White-Coal Co. v. United States, 2 Cir., 15 F.2d 366. While the libellant insisted this was giving the term "errors of navigation" too broad a meaning, citing The Manitoba, D.C., 104 F. 145, and The Eli B. Conine, 2 Cir., 233 F. 987, the contention was overruled by the Circuit Court.

In view of "The Interports No. 767" decision, the interpretation of paragraph "Tenth" must be given full force and effect.

Under paragraph "Eighth", it seems that the libellant might be entitled to some compensation for the loss of the use of the tug during the stranding.

Paragraph "Eighth" provides that in the event of the loss of the use of the tug exceeding forty-eight (48) consecutive hours, the payment of hire shall cease for the time thereby lost.

■ It is conceded that payment for hire was made in advance. Therefore, libellant is entitled to recover for loss of the use of

the tug, subject to proof before a commissioner as to whether or not loss of use exceeded forty-eight (48) consecutive hours.

Enter decree in favor of the libellant limited to the lines set down in this opinion as to damages for loss of use of the tug.

The claimant must prevail as to all other phases of this action.

Submit findings of fact and conclusions of law in accordance with this decision.