**DELAWARE RIVER TERMINALS, INC.,**
**Libellant,**

v.

**M/S ANCORA**
**and**
**Canadian Transport, Inc.**
**and**
**Curtis Bay Towing Company of**
**Pennsylvania**
**and**
**P. F. Martin, Inc., Respondents.**

**P. F. MARTIN, INC., Cross-Libellant,**

v.

**CANADIAN TRANSPORT, INC., Cross-**
**Respondent.**

**CURTIS BAY TOWING COMPANY OF**
**PENNSYLVANIA, Cross-Libellant,**

v.

**CANADIAN TRANSPORT, INC., Cross-**
**Respondent.**

**No. 331 of 1963.**

United States District Court
E. D. Pennsylvania.

May 11, 1966.

Bernard J. Smolens, Philadelphia, Pa., for plaintiff.

Bernard J. McNulty, Jr., Philadelphia, Pa., for Canadian Transport, Inc.

William R. Deasey, Philadelphia, Pa., for Curtis Bay Towing Co. of Pa. and P. F. Martin, Inc.

JOHN W. LORD, Jr., District Judge.

In this admiralty action, the libellant, Delaware River Terminals, Inc. (hereafter called Terminals) seeks to recover for damage done to its pier during the docking of the M/S Ancora. There are four respondents. The first is the Ancora herself. The next is the present moving party, Canadian Transport, Inc., charterer of the vessel (hereafter called Canadian). The third and fourth respondents are, respectively, Curtis Bay Towing Co. of Pennsylvania (hereafter called Curtis), and P. F. Martin, Inc. (hereafter called Martin). Curtis and Martin are maritime service companies engaged in the business, *inter alia*, of supplying tugs and tows.

The libel alleges that the docking operation involved herein was being conducted by Curtis and Martin pursuant to agreements with respondent Canadian. It is also alleged that the docking operation was under the joint and several control of the three corporate respondents.

Answers have been filed by Curtis and Martin. They admit the allegation that the docking of the Ancora was undertaken pursuant to an agreement between them and Canadian. But they go on to deny that they were in control of the Ancora while she was being docked. To the contrary, Curtis and Martin allege that she was at that time under the direction and control of Canadian.

In lieu of an answer, Canadian has filed Exceptive Allegations and Exceptions, together with a copy of the Charter Party, seeking to be dismissed with respect to libellant's claim on the ground that respondent was a time charterer and consequently was not responsible for the docking operation that caused libellant's damage.

Libellant has filed an initial and also a supplemental brief contra Canadian's exceptions. Martin and Curtis likewise filed a joint brief in opposition to the exceptions, and are understood to have also adopted the supplementary brief of libellant so far as applicable. Meanwhile Canadian has submitted a copy of the charter party (as already mentioned) together with two briefs in support of its exceptive allegations and exceptions.

The Court has heard oral argument in the matter, and has examined the briefs and authorities submitted by the parties, and the matter is ready for adjudication. All authorities cited by the parties, and a great many more, have been consulted, with the result that the Court is constrained to rule in favor of Canadian. This position has been reached after much more study than the basic narrow and well-settled question would at the outset seem to warrant. Such caution is the result of a procedural reluctance to dismiss a party from an action, at its out-

set, when testimonial eventualities might reveal unanticipated grounds of responsibility.

But there is simply no basis in law for retaining Canadian in the case. As a time charterer, Canadian is not responsible for navigation of the ship, and docking is a part of her navigation. Luckenbach v. Insular Line, 186 F. 327, 328 (2nd Cir. 1911). As was said in that case at page 328:

"It has been repeatedly held that this form of time charter is not a demise of the ship. It is sufficient to refer to our recent decision in The Volund, 181 Fed. 643, where we held that the navigation of the ship during the time of the charter is in the hands of the owner. We consider the docking of the vessel a part of her navigation. * * * Many authorities are cited on appellant's brief in support of his contention that the charterer was in control of the navigation of the vessel for the purpose of docking her, and that the tugs were consignee's agents, for whose negligence it would be liable. We find in none of the cases cited anything to induce a modification of the conclusions expressed in The Volund. * * *"

The applicability of the quoted passage to the instant case is inescapable. The foregoing authorities unerringly fasten liability on the owners, to the exclusion of the charterers.

Some 45 years have elapsed since that decision, however. Thus it has been necessary to determine whether those authorities have been modified or eroded since 1911. Accordingly, all opinions in the courts of the United States, from 1910 to April of 1966, in which the foregoing conclusions of the Luckenbach and Volund cases were cited, have been reviewed, i. e. The Volund, 181 F. 643, 666 (2nd Cir. 1910); Luckenbach v. Insular Line, 186 F. 327 (2nd Cir. 1911). And in the process of examining more than 20 such cases, not a single statement derogating from the stated principles was encountered.

Since the integrity of the principles of those two cases is the touchstone of decision here, the doctrine has even been traced chronologically through the decisions disclosed by the above-described search. To mention all such cases would be unnecessarily burdensome, but a few are selected for citation herein: The Capitaine Faure, 7 F.2d 131, 132 (E.D. N.Y.1924); Scottish Nav. Co. v. Munson S.S. Line, 60 F.2d 101, 102 (S.D.N.Y. 1924); The Niels R. Finsen, 52 F.2d 795, 798 (S.D.N.Y.1931); The Terne, 64 F.2d 502, 503 (2nd Cir. 1933); Venezuelan Meat Export Co. v. United States, 12 F.Supp. 379, 386 (D.Md.1935); The West Eldara, 101 F.2d 45, 47 and 104 F.2d 670, 671 (2nd Cir. 1939); The Henry W. Card, 51 F.Supp. 380, 381 (E.D.N.Y.1943), affirmed in 144 F.2d 705, 706 (2nd Cir. 1944); Palardy v. American-Hawaiian S.S. Co., 169 F.2d 619 (3rd Cir. 1948); People of State of California v. The Jules Fribourg, 140 F.Supp. 333, 337 (N.D.Calif.1956); Bergan v. International Freighting Corp., 254 F.2d 231, 233 (2nd Cir. 1958); Randolph v. Waterman Steamship Corp., 166 F.Supp. 732, 733 (E.D.Pa.1958).

These cases present the foregoing principle in a great variety of aspects, yet not one of them suggests any exception to the rule. That rule, to restate it, is that in the case of a time charter, the navigation of the ship is the responsibility of the owner, and docking is a part of navigation. Of the foregoing list of cases, the very earliest is rather squarely in point. The Volund, 181 F. 643 (2nd Cir. 1910). The Volund, steaming up the Hudson River, collided with the steam yacht Normandie, passing downstream. The collision was the fault of the Volund, but it was held that the owner and not the time charterer was liable. The fact that the Volund was at the time being navigated by a supercargo employed by the charterer as provided by the charter party, and that the supercargo was then acting as pilot with consent of the master, did not affect the time charterer's freedom from liability.

In a 1931 case, a moored barge was struck by the steamship Finsen and driven against another moored vessel, damaging the barge in particular. The Niels R. Finsen, 52 F.2d 795 (S.D.N.Y. 1931). Pursuant to its right and duty under the standard time charter, the charterer had made arrangements with a towing company to handle the docking. The captain of one of the tugs was piloting the Finsen at the time of the damage to the moored barge. It was held that since docking of the steamship subject to a time charter was part of its navigation, the owners and not the time charterer were responsible for the docking operation.

It has been argued, and not denied, that the Time Charter Party is a standardized contract. Poor on Charter Parties and Ocean Bills of Lading, pp. 30 & 299 (4th ed.) sets out the very clauses which appear in the present case. Canadian points to this fact as serving to "illustrate the settled nature of the traditional provisions of Charter Parties."

The correctness of that statement is seen, *inter alia,* in certain of the above-listed cases which quote paragraphs identical even to the numbering of those seen in the present charter party. See Scottish Nav. Co. v. Munson S.S. Line, 60 F.2d 101 (S.D.N.Y.1924) which mentions that "The printed form used is entitled 'Time Charter, Government Form, approved by the New York Produce Exchange.'" See also The Terne, 64 F.2d 502 (2nd Cir. 1933).

The Eldara cases concern a time charter, and a collision with the bulkhead of a pier in the course of docking. The West Eldara, 101 F.2d 45 and 104 F.2d 670 (2nd Cir. 1939). The question there was damage to the ship, but the statement of the law is entirely consistent with that quoted earlier, as follows (citations omitted):

"In a time charter such as this, the navigation of the vessel has been repeatedly held to be the entire responsibility of the ship owner. * * * The fact that the charter provided that the charterer should provide and pay for pilotage and port charges did not make the pilot the agent of the charterer. His negligent acts as found were acts of navigation. The owners were responsible for the entire navigation of the ship. * * *" 101 F.2d 47.

That same opinion cites the case of Bramble v. Culmer, 78 F. 497 (4th Cir. 1897). The latter opinion contains an elaborate review of the early English and American authorities—all of which are consistent with the foregoing. Notable, however, is the following passage at 78 F. 503:

"We do not find in Homer Ramsdell Transp. Co. v. Compagnie Generale Transatlantique, 63 Fed. [845] 847 * * * anything not in consonance with the views upon which our decision rests. *The injury complained of in that case being to a pier, a part of the land, and it not being a marine tort,* the question involved was the liability at common law. The maritime law as to the responsibility of the vessel, and as to the position and powers of the master, is not derived from the common law. It is founded upon usages and practices so remote that their origin cannot be traced. * * *" (Emphasis added.)

In the instant case, no one has suggested that the damage to the pier is not a maritime tort, however. Indeed, from the cases already cited, one may assume that if it ever was the rule that such was not a maritime tort, the rule has been changed. It is most certainly not the purpose here to suggest an additional complication. The only function of the quotation here is that it affords background for the following comparison or analogy to the law which would have been applicable had this been a matter beyond the scope of admiralty.

■ If this had been a common law case, the present motion would be amenable to disposition under Rules 12 and 56 Fed.R.Civ.P. The defense is that the charterer is not responsible for navigation, and thus not liable for damage caus-

ed by faulty navigation. Rule 12(b) (6), i. e.: "failure to state a claim upon which relief can be granted."

But the Charter Party is outside the pleadings, and judgment on the pleadings, under Rule 12(c) would be unavailable. However, the Charter Party has been submitted and argued without dispute as to its authenticity. The only question is one of law—the legal effect of that agreement. Applicable, therefore, would be the part of Rule 12 (c) which says that "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

Thus were this matter on the common law side, the present Exceptive Allegations and Exceptions could be treated as amounting to a motion for partial summary judgment under Rule 56(b) and (c), and Canadian would be entitled to judgment thereon.

Further in this direction is the fact that the Supreme Court, by its adoption of General Admiralty Rule 58, expressly authorized the use of summary judgment in admiralty. 2 Benedict on Admiralty (Supp.1965), page 7 (6th Ed. by A. W. Knauth).

The new rule, which became effective July 19, 1961, appears identical to Rule 56(b) (c), Fed.R.Civ.P. except for deletion of the words "answers to interrogatories" in part (c). Thus the parallelism of the Admiralty and the Civil Rule becomes very much closer indeed.

The case presented, however, follows the traditions of Admiralty pleading and counsel for respondents have submitted a plethora of cases to the effect that exceptive allegations may not be used as a substitute for a summary judgment, e. g. North American Steel Prod. Corp. v. S.S. Andros Mentor, 194 F.Supp. 394 (S.D.N.Y.1961).

This Court, however, prefers to pretermit so far as possible any discussion of admiralty pleading, and the possibility of changes effected by the newer Admiralty Rules such as the aforesaid Rule 58, effective 1961. Such discussion is deemed unnecessary to disposition of the present motion, and the matter will be taken as presented.

On the one hand, respondents Martin and Curtis have amassed authorities such as North American Steel Prod. Corp. v. S.S. Andros Mentor, 194 F.Supp. 394 (S.D.N.Y.1961), Evangelinos v. Andreavapor Cia. Nav., S. A., 162 F.Supp. 520 (S.D.N.Y.1958), and 2 Benedict on Admiralty, § 334 (6th Ed., Knauth), all of which say in substance that

The exceptive allegation is a pleading primarily designed to bring to the attention of the court a fact not appearing on the face of the libel but constituting in itself a complete bar to recovery.

From that basis these respondents contend that the Exceptive Allegations and Exceptions to the Libel do not properly raise the defense which Canadian asserts. Those arguments are not believed sufficient to overcome the following circumstances. Respondent Canadian Transport has used proper procedure in pleading the Charter Party by means of Exceptions to the Libel. Libellant has not taken issue with the Exceptive Allegations. The Court also agrees with the following contentions of Canadian:

" * * * If libellant felt that there are certain facts which would show that Canadian Transport controlled the navigation of the vessel in spite of the Charter Party, it should have answered our Exceptions and engaged in the customary discovery in order to establish the necessary facts on the record. We have not raised mixed questions of law and fact, but have pleaded a fact which is now established upon the record by means of our Exceptive Allegations, and, in accordance with the age old traditions of maritime law, the Charter Party is entitled to its traditional interpretation and is, upon this state of the record, conclusive as to Canadian Transport's status and duties not only as to the owner of the vessel, but as to third parties as well."

Consonant with the foregoing view, the motion of Canadian Transport, Inc. to be discharged as a party respondent to this action is granted, and it is so ordered.